UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RECEIPT # _____
AMOUNT $ _____
SUMMONS ISSUED _N/A_
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _m_
DATE _4-5-05_

SOVEREIGN BANK,
   PLAINTIFF

vs.

BOWDITCH BOAT HOLDINGS, LLC;
GOLDENEYE CORPORATION;
SALEM WHALE WATCH&
CRUISE CO. LLC;  LAKE CHAMPLAIN
TRANSPORTATION CO.;
 ROBERT E. BLAIR JR.;
 ROBERT J. SALEM;
 AND HENRY LORD

   DEFENDANTS

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No.

**05-10668NMG**

MAGISTRATE JUDGE _Dein_

**NOTICE OF REMOVAL**

TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS:

This Notice of  Removal on behalf of Bowditch Boat Holdings, LLC; respectfully states:

1.    On 17 March 2005, an action was commenced against the Petitioner, Bowditch

Boat Holdings, LLC, Inc., (hereinafter "Bowditch") in the Superior Court of the

Commonwealth of Massachusetts in and for the County of Suffolk under the name

and style Sovereign Bank v. Bowditch Boat Holdings, LLC, et. al.,  Civil Action

No. 05-1021. A copy of a Summons and Complaint was served upon Bowditch on

or about 22 March 2005. A copy of said Summons and Complaint is attached

hereto as **Exhibit 1**.

1

2.    No responsive pleading or appearance by Bowditch Boat Holdings, LLC; has been filed at this time.

3.    In its Complaint, plaintiff, Sovereign Bank has requested monetary damages, against Bowditch and against several entities and individuals in excess of $200,000.00. The monetary damages claimed by plaintiff are listed on the Civil Action Cover Sheet (part of **Exhibit 1**).

4.    Plaintiff's underlying claim arises from a Promissory Note executed by Bowditch to finance the purchase of the M/V MANISEE. Plaintiff's predecessor in interest, First Essex Bank, FSB, secured that Note by a <u>Preferred Ship Mortgage that was duly filed and recorded with the United States Coast Guard National Vessel Documentation Center on 21 June 2000 at PM Book 0061, Page 213</u>. Attached, as **Exhibit 2** is a copy of the recorded Preferred Ship Mortgage.

5.    Several entities and individuals are also named as defendants in the Complaint. Those defendants are alleged to be guarantors of Bowditch's obligation to plaintiff pursuant to the Note and Preferred Ship Mortgage.

6.    The above-described action is one over which this court has original jurisdiction under the provisions of Title 28, USC Sec.1331, based upon federal question jurisdiction. Jurisdiction of this court is granted by 46 USC Sec. 31325 (c) [relating back to 46 USC Sec. (b) (2) (B)] A copy of that statute is attached hereto as **Exhibit 3**. This case may be removed to this court by Bowditch pursuant to the provisions of Title 28, United States Code, section 1441, in that it is a civil action directly against the maker and guarantors for the outstanding indebtedness

2

in conjunction with a Note and Preferred Ship Mortgage.

7.    The additional entities and individuals that have been named in the Complaint as
defendants are Goldeneye Corporation, Salem Whale Watch & Cruise Co. LLC,
Lake Champlain Transportation Co., Robert E. Blair, Robert J. Salem and Henry
Lord. All of the additional defendants have notified Bowditch and undersigned
counsel that they consent to and join in the removal of the matter to the United
States District Court. Such consent with regard to removal is not an admission as
to whether or not any of the other defendants in this matter has been properly
served with process.


WHEREFORE, Bowditch prays that the above action now pending against it and
other defendants in the Superior Court of the Commonwealth of Massachusetts for
Suffolk County be removed to the United States District Court for the District of
Massachusetts, at Boston, Massachusetts pursuant 28 USC Sec.1441 for further
proceedings as the court may require or otherwise deemed appropriate in the interests of
justice.

EX A TO

COMPLAINT

# PROMISSORY NOTE

| Borrower: | Bowditch Boat Holdings, LLC<br>4 Blaney Street<br>Salem, MA 01970 | Lender: | First Essex Bank, FSB<br>296 Essex Street<br>Lawrence, MA 01842 |
|---|---|---|---|

**Principal Amount: $290,000.00**  **Initial Rate: 10.500%**  **Date of Note: June 14, 2000**

**PROMISE TO PAY.** Bowditch Boat Holdings, LLC ("Borrower") promises to pay to First Essex Bank, FSB ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Ninety Thousand & 00/100 Dollars ($290,000.00), together with interest on the unpaid principal balance from June 14, 2000, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in 119 principal payments of $2,417.00 each and one final principal and interest payment of $2,398.49. Borrower's first principal payment is due July 14, 2000, and all subsequent principal payments are due on the same day of each month after that. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date. Borrower's first interest payment is due July 14, 2000, and all subsequent interest payments are due on the same day of each month after that. Borrower's final payment due June 14, 2010, will be for all principal and accrued interest not yet paid. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid collection costs and any late charges, then to any unpaid interest, and any remaining amount to principal.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Prime Rate as published in the Wall Street Journal (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. Borrower understands that Lender may make loans based on other rates as well. The interest rate change will not occur more often than each day. The Index currently is 9.500% per annum. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate of 1.000 percentage point over the Index, resulting in an initial rate of 10.500% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, they will reduce the principal balance due and may result in Borrower making fewer payments.

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**DEFAULT.** Borrower will be in default if any of the following happens: (a) Borrower fails to make any payment when due. (b) Borrower breaks any promise Borrower has made to Lender, or Borrower fails to comply with or to perform when due any other term, obligation, covenant, or condition contained in this Note or any agreement related to this Note, or in any other agreement or loan Borrower has with Lender. (c) Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the Related Documents. (d) Any representation or statement made or furnished to Lender by Borrower or on Borrower's behalf is false or misleading in any material respect either now or at the time made or furnished. (e) Borrower dissolves (regardless of whether election to continue is made), any member withdraws from Borrower, any member dies, or any of the members or Borrower becomes insolvent, a receiver is appointed for any part of Borrower's property, Borrower makes an assignment for the benefit of creditors, or any proceeding is commenced either by Borrower or against Borrower under any bankruptcy or insolvency laws. (f) Any creditor tries to take any of Borrower's property on or in which Lender has a lien or security interest. This includes a garnishment of any of Borrower's accounts with Lender. (g) Any guarantor dies or any of the other events described in this default section occurs with respect to any guarantor of this Note. (h) A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired. (i) Lender in good faith deems itself insecure.

If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured (and no event of default will have occurred) if Borrower, after receiving written notice from Lender demanding cure of such default: (a) cures the default within thirty (30) days; or (b) if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, without notice, and then Borrower will pay that amount. Upon default, including failure to pay upon final maturity, Lender, at its option, may also, if permitted under applicable law, increase the variable interest rate on this Note to 3.000 percentage points over the Index. The interest rate will not exceed the maximum rate permitted by applicable law. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower also will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law. This Note has been delivered to Lender and accepted by Lender in the Commonwealth of Massachusetts. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Essex County, the Commonwealth of Massachusetts. Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other. This Note shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

**RIGHT OF SETOFF.** Borrower grants to Lender a contractual security interest in, and hereby assigns, conveys, delivers, pledges, and transfers to Lender all Borrower's right, title and interest in and to, Borrower's accounts with Lender (whether checking, savings, or some other account), including without limitation all accounts held jointly with someone else and all accounts Borrower may open in the future, excluding however all IRA and Keogh accounts, and all trust accounts for which the grant of a security interest would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on this Note against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided on this paragraph.

05    2000

# PROMISSORY NOTE
(Continued)

Page 2

**WAIVERS AND GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, protest and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. To the extent permitted by applicable law, all such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan, or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. THIS NOTE IS EXECUTED UNDER SEAL. BORROWER AGREES TO THE TERMS OF THE NOTE AND ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THE NOTE.**

**BORROWER:**

Bowditch Boat Holdings, LLC   By its Manager,
Goldeneye Corporation

By: _____
    Robert J. Salem, Manager President and Treasurer,
    Authorized Person

Signed, acknowledged and delivered in the presence of:

X _____
   Witness

X _____
   Witness

Variable Rate. Principal + Interest.          LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.29 (C) Concentrex 2000 All rights reserved. [MA-D20 BOWDITCH.LN C5.OVL]

EXHIBIT B

TO

COMPLAINT

# *RIEMER & BRAUNSTEIN*LLP
=========== C O U N S E L O R S   A T   L A W ===========

Three Center Plaza · Boston, Massachusetts 02108-2003

(617) 523-9000 · Fax (617) 880-3456

E-Mail firm@riemerlaw.com

Mark S. Scott
Direct Dial: (617) 880-3452
Writer's Direct Fax: (617) 692-3452
E-Mail: mscott@riemerlaw.com

New York, New York
(212) 302-8880 · Fax (212) 789-3100
Burlington, Massachusetts
(781) 273-2270 · Fax (781) 273-0776

**Certified Article Number**

**7160 3901 9848 7661 6514**

**SENDERS RECORD**

March 10, 2005

**VIA CERTIFIED MAIL/
RETURN RECEIPT REQUESTED
AND FIRST CLASS MAIL**

Bowditch Boat Holdings, LLC
4 Blaney Street
Salem, Massachusetts 01970
Attention:  Mr. Robert J. Salem

Re:    **Loan Arrangement with Sovereign Bank, successor by merger with First Essex Bank, FSB**

Dear Mr. Salem:

Please be advised that this firm is counsel to Sovereign Bank, successor by merger with First Essex Bank, FSB (the **"Bank"**), in connection with a certain loan arrangement (the **"Loan Arrangement"**) entered into between the Bank and Bowditch Boat Holdings, LLC (the **"Borrower"**).

The Loan Arrangement is evidenced by, among other documents, instruments and agreements, the following (collectively, the **"Loan Documents"**): (i) a certain Promissory Note dated June 14, 2000 made by the Borrower payable to the Bank in the original principal amount of $290,000.00, as amended by that certain Change in Terms Agreement dated November 30, 2000, and as further amended by that certain Change in Terms Agreement dated August 8, 2003, (ii) a certain Commercial Security Agreement dated June 14, 2000 between the Borrower and the Bank, (iii) a certain Business Loan Agreement dated June 14, 2000 between the Borrower and the Bank, and (iv) a certain First Preferred Mortgage dated June 19, 2000 granted by the Borrower to the Bank.

Please be advised that certain defaults have occurred under the Loan Documents.  Accordingly, the Bank hereby makes **DEMAND** upon the Borrower for payment in full of all amounts due under the Loan Documents, including without limitation, all principal, interest (accrued and hereafter accruing), fees, costs, expenses, and costs of collection (including attorneys' fees).

Bowditch Boat Holdings, LLC
March 10, 2005
Page 2

**PLEASE TAKE FURTHER NOTICE** that if all amounts due pursuant to the Loan Documents are not paid in full forthwith, the Bank may commence all appropriate action to collect the outstanding indebtedness without further notice to the Borrower.

**PLEASE TAKE FURTHER NOTICE** that the Bank hereby expressly reserves the right from and after the date of this notice to accept one or more payments from the Borrower or on behalf of the Borrower, and to apply any such amounts in reduction of the outstanding indebtedness under the Loan Documents. The acceptance of any such payment shall not constitute a waiver of any defaults, whether now existing or hereafter arising, or a waiver of the Bank's demand for immediate payment in full. Further, the Bank hereby expressly reserves all of its rights and remedies in this matter and confirms that the terms and conditions of the existing documents, instruments, and agreements remain in full force and effect.

Your prompt attention to this matter is anticipated.

Very truly yours,

Mark S. Scott

cc:     Mr. Bret Bokelkamp (via telecopier)
        Barry G. Braunstein, Esquire
        Goldeneye Corporation
        Salem Whale Watch & Cruise Company, LLC
        Lake Champlain Transportation Company
        Mr. Robert E. Blair, Jr.
        Mr. Robert J. Salem
        Mr. Henry Lord
862819.1

EXHIBIT C

TO Complaint

# COMMERCIAL GUARAN\

**Borrower:**  Bowditch Boat Holdings, LLC
4 Blaney Street
Salem, MA 01970

**Lender:**  First Essex Bank, FSB
296 Essex Street
Lawrence, MA 01842

**Guarantor:**  Robert E. Blair, Jr.

---

**AMOUNT OF GUARANTY.** The amount of this Guaranty is Unlimited.

**CONTINUING UNLIMITED GUARANTY.** For good and valuable consideration, Robert E. Blair, Jr. ("Guarantor") absolutely and unconditionally guarantees and promises to pay to First Essex Bank, FSB ("Lender") or its order, in legal tender of the United States of America, the Indebtedness (as that term is defined below) of Bowditch Boat Holdings, LLC ("Borrower") to Lender on the terms and conditions set forth in this Guaranty. Under this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing.

**DEFINITIONS.** The following words shall have the following meanings when used in this Guaranty:

Borrower.  The word "Borrower" means Bowditch Boat Holdings, LLC.

Guarantor.  The word "Guarantor" means Robert E. Blair, Jr.

Guaranty.  The word "Guaranty" means this Guaranty made by Guarantor for the benefit of Lender dated June 14, 2000.

Indebtedness.  The word "Indebtedness" is used in its most comprehensive sense and means and includes any and all of Borrower's liabilities, obligations, debts, and indebtedness to Lender, now existing or hereinafter incurred or created, including, without limitation, all loans, advances, interest, costs, debts, overdraft indebtedness, credit card indebtedness, lease obligations, other obligations, and liabilities of Borrower, or any of them, and any present or future judgments against Borrower, or any of them; and whether any such Indebtedness is voluntarily or involuntarily incurred, due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined; whether Borrower may be liable individually or jointly with others, or primarily or secondarily, or as guarantor or surety; whether recovery on the Indebtedness may be or may become barred or unenforceable against Borrower for any reason whatsoever; and whether the Indebtedness arises from transactions which may be voidable on account of infancy, insanity, ultra vires, or otherwise.

Lender.  The word "Lender" means First Essex Bank, FSB, its successors and assigns.

Related Documents.  The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**NATURE OF GUARANTY.** Guarantor's liability under this Guaranty shall be open and continuous for so long as this Guaranty remains in force. Guarantor intends to guarantee at all times the performance and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of all Indebtedness. Accordingly, no payments made upon the Indebtedness will discharge or diminish the continuing liability of Guarantor in connection with any remaining portions of the Indebtedness or any of the Indebtedness which subsequently arises or is thereafter incurred or contracted.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all other obligations of Guarantor under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at the address of Lender listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to advances or new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. This Guaranty will continue to bind Guarantor for all Indebtedness incurred by Borrower or committed by Lender prior to receipt of Guarantor's written notice of revocation, including any extensions, renewals, substitutions or modifications of the Indebtedness. All renewals, extensions, substitutions, and modifications of the Indebtedness granted after Guarantor's revocation, are contemplated under this Guaranty and, specifically will not be considered to be new Indebtedness. This Guaranty shall bind the estate of Guarantor as to Indebtedness created both before and after the death or incapacity of Guarantor, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation received by Lender from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of Indebtedness covered by this Guaranty, and it is specifically acknowledged and agreed by Guarantor that reductions in the amount of Indebtedness, even to zero dollars ($0.00), prior to written revocation of this Guaranty by Guarantor shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the guaranteed Indebtedness remains unpaid and even though the Indebtedness guaranteed may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (a) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (b) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (c) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (d) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (e) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (f) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (g) to sell, transfer, assign, or grant participations in all or any part of the Indebtedness; and (h) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (a) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (b) this Guaranty is executed at Borrower's request and not at the request of Lender; (c) Guarantor has full power, right and authority to enter into this Guaranty; (d) the provisions of

# COMMERCIAL GUARAN
## (Continued)

this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (e) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (f) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present the financial condition of Guarantor as of the dates the financial information is provided; (g) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (h) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (i) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (j) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

GUARANTOR'S WAIVERS. Except as prohibited by applicable law, Guarantor waives any right to require Lender (a) to continue lending money or to extend other credit to Borrower; (b) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (c) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (d) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (e) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (f) to pursue any other remedy within Lender's power; or (g) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

If now or hereafter (a) Borrower shall be or become insolvent, and (b) the Indebtedness shall not at all times until paid be fully secured by collateral pledged by Borrower, Guarantor hereby forever waives and relinquishes in favor of Lender and Borrower, and their respective successors, any claim or right to payment Guarantor may now have or hereafter have or acquire against Borrower, by subrogation or otherwise, so that at no time shall Guarantor be or become a "creditor" of Borrower within the meaning of 11 U.S.C. section 547(b), or any successor provision of the Federal bankruptcy laws.

Guarantor also waives any and all rights or defenses arising by reason of (a) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (b) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (c) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (d) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (e) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced there is outstanding Indebtedness of Borrower to Lender which is not barred by any applicable statute of limitations; or (f) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS. Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

LENDER'S RIGHT OF SETOFF. In addition to all liens upon and rights of setoff against the moneys, securities or other property of Guarantor given to Lender by law, Lender shall have, with respect to Guarantor's obligations to Lender under this Guaranty and to the extent permitted by law, a contractual security interest in and a right of setoff against, and Guarantor hereby assigns, conveys, delivers, pledges, and transfers to Lender all of Guarantor's right, title and interest in and to, all deposits, moneys, securities and other property of Guarantor now or hereafter in the possession of or on deposit with Lender, whether held in a general or special account or deposit, whether held jointly with someone else, or whether held for safekeeping or otherwise, excluding however all IRA, Keogh, and trust accounts. Every such security interest and right of setoff may be exercised without demand upon or notice to Guarantor. No security interest or right of setoff shall be deemed to have been waived by any act or conduct on the part of Lender or by any neglect to exercise such right of setoff or to enforce such security interest or by any delay in so doing. Every right of setoff and security interest shall continue in full force and effect until such right of setoff or security interest is specifically waived or released by an instrument in writing executed by Lender.

SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR. Guarantor agrees that the Indebtedness of Borrower to Lender, whether now existing or hereafter created, shall be prior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness of Borrower to Lender. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender hereby is authorized, in the name of Guarantor, from time to time to execute and file financing statements and continuation statements and to execute such other documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

MISCELLANEOUS PROVISIONS. The following miscellaneous provisions are a part of this Guaranty:

Amendments. This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

# COMMERCIAL GUARAN
(Continued)

**Applicable Law.** This Guaranty has been delivered to Lender and accepted by Lender in the Commonwealth of Massachusetts. If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Essex County, Commonwealth of Massachusetts. Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other. This Guaranty shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (and including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Notices.** All notices required to be given by either party to the other under this Guaranty shall be in writing, may be sent by telefacsimile (unless otherwise required by law), and, except for revocation notices by Guarantor, shall be effective when actually delivered or when deposited with a nationally recognized overnight courier, or when deposited in the United States mail, first class postage prepaid, addressed to the party to whom the notice is to be given at the address shown above or to such other addresses as either party may designate to the other in writing. All revocation notices by Guarantor shall be in writing and shall be effective only upon delivery to Lender as provided above in the section titled "DURATION OF GUARANTY." If there is more than one Guarantor, notice to any Guarantor will constitute notice to all Guarantors. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty. If a court of competent jurisdiction finds any provision of this Guaranty to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances, and all provisions of this Guaranty in all other respects shall remain valid and enforceable. If any one or more of Borrower or Guarantor are corporations or partnerships, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, or agents acting or purporting to act on their behalf, and any Indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Waiver.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO IT! TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AN DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORT IN THE SECTION TITLED "DURATION OF GUARANTY." NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED JUNE 14, 2000. THIS GUARANTY IS EXECUTED UNDER SEAL.

GUARANTOR:

X _____
Robert E. Blair, Jr.

Signed, acknowledged and delivered in the presence of:

X _____
Witness

X _____
Witness

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.29 (C) Concentrex 2000 All rights reserved. [MA-E20 BOWDITCH.LN CS.OVL]

EXHIBIT
D TO
COMPLAINT

# RIEMER & BRAUNSTEIN LLP

## ═══════ COUNSELORS AT LAW ═══════

Three Center Plaza · Boston, Massachusetts 02108-2003

(617) 523-9000 · Fax (617) 880-3456

E-Mail firm@riemerlaw.com

Mark S. Scott
Direct Dial: (617) 880-3452
Writer's Direct Fax: (617) 692-3452
E-Mail: mscott@riemerlaw.com

New York, New York
(212) 302-8880 · Fax (212) 789-3100
Burlington, Massachusetts
(781) 273-2270 · Fax (781) 273-0776

**Certified Article Number**

**7160 3901 9848 7660 4252**

**SENDERS RECORD**

March 10, 2005

**VIA CERTIFIED MAIL/
RETURN RECEIPT REQUESTED
AND FIRST CLASS MAIL**

Mr. Robert E. Blair, Jr.
39 Kittery Ave
Rowley, Massachusetts 02969

Re:  **Loan Arrangement between Sovereign Bank, successor by merger with First Essex Bank, FSB, and Bowditch Boat Holdings, LLC**

Dear Mr. Blair:

Please be advised that this firm is counsel to Sovereign Bank, successor by merger with First Essex Bank, FSB (the "**Bank**"), in connection with a certain loan arrangement entered into between the Bank and Bowditch Boat Holdings, LLC (the "**Borrower**"), and with you (the "**Guarantor**").

Reference is made to that certain Commercial Guaranty (the "**Guaranty**") dated June 14, 2000 executed and delivered by the Guarantor to the Bank, pursuant to which the Guarantor unconditionally guaranteed the full and punctual payment of all obligations of the Borrower to the Bank.

Please be advised that the Borrower is in default of its obligations to the Bank. Accordingly, the Bank hereby makes **DEMAND** upon the Guarantor for payment in full of all amounts due under the Guaranty, including without limitation, all principal, interest (accrued and hereafter accruing), fees, costs, expenses, and costs of collection (including attorneys' fees).

**PLEASE TAKE NOTICE** that if all amounts due pursuant to the Guaranty are not immediately paid in full, the Bank may commence all appropriate action to collect the outstanding indebtedness without further notice to the Guarantor.

**PLEASE TAKE FURTHER NOTICE** that the Bank hereby expressly reserves the right from and after the date of this notice to accept one or more payments from the Guarantor or on the Guarantor's behalf, and to apply any such payment in reduction of the outstanding obligations due under the Guaranty. The acceptance of any such payment shall not constitute a waiver of any defaults, whether now existing or hereafter arising, nor a waiver of the Bank's demand for immediate payment in full. Further, the Bank

Times Square Tower, Suite 2506 · Seven Times Square · New York, New York 10036 · (212) 302-8880 · Fax (212) 789-3100
Seven New England Executive Park · Burlington, Massachusetts 01803-5008 · (781) 273-2270 · Fax (781) 273-0776

Mr. Robert E. Blair, Jr.
March 10, 2005
Page 2

hereby expressly reserves all of its rights and remedies in this matter and confirms that the terms and
conditions of the existing documents, instruments, and agreements remain in full force and effect.

Your prompt attention to this matter is anticipated.

Very truly yours,

Mark S. Scott

MSS
cc:     Mr. Bret Bokelkamp (via telecopier)
        Barry G. Braunstein, Esquire
880702.1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

05-10

1. Title of case (name of first party on each side only) Sovereign Bank v. Bowditch Boat Holding, LLC et. al.

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

| | | | |
|---|---|---|---|
| ☐ | I. | 160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT. | |
| ☒ | II. | 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950. | *Also complete AO 120 or AO 121 for patent, trademark or copyright cases |
| ☐ | III. | 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891. | |
| ☐ | IV. | 220, 422, 423, 430, 460, 480, 490, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900. | |
| ☐ | V. | 150, 152, 153. | |

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

NA - Removal

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

YES ☒ NO ☐

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)

YES ☐ NO ☒

If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

YES ☐ NO ☒

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

YES ☐ NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

YES ☐ NO ☒

A. If yes, in which division do all of the non-governmental parties reside?

Eastern Division ☐ Central Division ☐ Western Division ☐

B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

Eastern Division ☒ Central Division ☐ Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

YES ☐ NO ☒

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME Brian P Flanagan, Flanagan & Hunter, PC

ADDRESS 88 Black Falcon Ave. Suite 274, Boston, MA 02210

TELEPHONE NO. 617-482-3366

JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

SOVEREIGN BANK, SUCCESSOR BY MERGER w/ FIRST ESSEX BANK, FSB

**(b)** County of Residence of First Listed Plaintiff   SUFFOLK
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number) MERGYAN B, CASEY, ESQ
RICHMOR & BRAUNSTEIN LLP
THREE CENTER PLAZA BOSTON, MA 02108
617 523 4000

## DEFENDANTS

BOWDITCH BOAT HOLDING, LLC, ET al).

County of Residence of First Listed Defendant   ESSEX
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)   BRIAN P. FLANNAGAN, ESQ.
FLANNAGAN & HARRITON PC
88 BLACK FALCON AVE BOSTON MA, 02210
617-482-3366

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1   U.S. Government Plaintiff
- ☒ 3   Federal Question (U.S. Government Not a Party)
- ☐ 2   U.S. Government Defendant
- ☐ 4   Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☒ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
46 USC SEC 31325

Brief description of cause:
ENFORCEMENT OF NOTE AND GUARANTIES / SHIP MORTGAGE

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE                 DOCKET NUMBER

DATE   5 APRIL 2005

SIGNATURE OF ATTORNEY OF RECORD   BP Flag   BRIAN P. FLANNAGAN

## FOR OFFICE USE ONLY

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE