UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SOVEREIGN BANK, SUCCESSOR BY MERGER WITH FIRST ESSEX BANK, F.S.B., | Civil Action No. 05-10668-NMG |
| Plaintiff, | |
| v. | |
| BOWDITCH BOAT HOLDING, LLC; GOLDENEYE CORPORATION; SALEM WHALE WATCH & CRUISE COMPANY, LLC; LAKE CHAMPLAIN TRANSPORTATION COMPANY; ROBERT E. BLAIR, JR.; ROBERT J. SALEM AND HENRY LORD, | |
| Defendants. | |

**PLAINTIFF'S OPPOSITION TO THE DEFENDANTS' MOTIONS TO DISMISS**

**I. PRELIMINARY STATEMENT**

This is a suit against a corporate borrower for defaults under a promissory note and against the guarantors thereof originally filed in Massachusetts state court. The Defendants removed this case to this Court under the unique theory that because the Plaintiff, as additional collateral for the promissory note, received a first preferred mortgage on a vessel (which for economic reasons the Plaintiff chose not to pursue) that somehow this simple collection case is elevated into an issue of federal law. After removing the case to this venue, the Defendants now seek this Court's dismissal of the case claiming that the Plaintiff's choice of venue in the state court in Suffolk County was improper. In the alternative, the Defendants claim that process and service of process was insufficient and also that the Complaint needs to be stated more definitively.

Since the motions to dismiss state no meritorious grounds for dismissal, this Court should deny the motions and consider imposing sanctions for what appears to the Plaintiff to be the Defendants' abuse of the removal system.

## II.  BACKGROUND

The Plaintiff, Sovereign Bank, successor by merger with First Essex Bank, F.S.B. (the "Plaintiff"), filed this case in the Superior Court of the Commonwealth of Massachusetts for Suffolk County seeking to enforce a Promissory Note made by Bowditch Boat Holding, LLC ("Bowditch") and five Commercial Guaranties (the terms of which are identical) made by Goldeneye Corporation ("Goldeneye"), Salem Whale Watch & Cruise Company, LLC ("Salem Whale Watch"), Lake Champlain Transportation Company ("Lake Champlain"), Robert E. Blair, Jr. ("Blair"), and Robert J. Salem ("Salem") (collectively, the "Defendants").  See Complaint attached hereto as Exhibit 1 (hereinafter "Complaint").

The Superior Court granted Plaintiff's motions for real estate attachments as to the real property of the defendants, Goldeneye, Blair and Salem.  Thereafter, and despite the fact that the Plaintiff's Complaint states no issue of Federal Law, Bowditch removed the action to this Court. Bowditch, in its Notice of Removal, asserts that this Court has original jurisdiction over this matter pursuant to 46 U.S.C. § 31325, apparently claiming that when a note is secured by a preferred ships mortgage, even if the lender does not seek to foreclose upon the vessel, suit on the underlying note and guaranties must be brought in the Federal Court.  The Defendants now seek dismissal of the Complaint, having no meritorious substantive defenses, based on procedural grounds surrounding the filing of the Complaint in state court.  Although the motions to dismiss do not specify the factual grounds for dismissal and only contain cursory citations to the Massachusetts Rules of Civil Procedure, the Defendants' grounds for requesting dismissal appear to include improper venue, insufficiency of process and service of process and lack of

personal jurisdiction over Lake Champlain.  The Defendants also request a more definite statement, pursuant to Fed.R.Civ.P. 12(e).

This Court may not have subject matter jurisdiction over this case.  If this Court exercises jurisdiction to adjudicate this matter, the Plaintiff urges this Court to deny the Defendants' Motions to Dismiss as venue in the Superior Court for Suffolk County was proper (which is a moot issue as this case has been removed to this Court), process and service of process were sufficient (evidenced by the fact that all served parties have filed motions to dismiss), the court has jurisdiction over Lake Champlain, and a more definite statement is not required.

### III.  ARGUMENT

#### A.    This Court May Lack Subject Matter Jurisdiction Over this Action

The Plaintiff originally filed the Complaint, which raises no issues of Federal Law, in the Massachusetts Superior Court to recover on a promissory note and guaranties.  Although, as additional security for the Promissory Note executed by Bowditch, Bowditch granted the Bank a First Preferred Mortgage on the vessel known as the *M/V Manisee*, the Bank has not sought to enforce this mortgage and is not seeking to foreclose on the vessel.

Bowditch removed this action to this Court premised on 46 U.S.C. § 31325, which grants the District Courts original jurisdiction over cases involving defaults of preferred mortgages on documented vessels if suit is brought by the plaintiff in that forum.  In this case, the jurisdiction of this Court is not triggered because the Plaintiff is not seeking recovery as a result of any default under the First Preferred Mortgage.  The Plaintiff is only seeking state law enforcement of the terms and conditions of the Promissory Note and Commercial Guaranties.  This Court may not have jurisdiction pursuant to 46 U.S.C. § 31325.  See Dietrich v. Key Bank, N.A., 72 F.3d 1509, 1515 (11th Cir. 1996) (holding that 46 U.S.C. § 31325 does not grant exclusive jurisdiction

to the federal courts, does not provide that a proceeding in rem to foreclose on the vessel is the exclusive remedy for default under a preferred mortgage and does not prohibit a creditor's use of state self help remedies); Duzich v. Coastal Plains Production Credit Assoc., 861 F.Supp. 596, 598 (S.D. Tx. 1994) (noting that federal court jurisdiction under 46 U.S.C. § 31325 is not exclusive of the jurisdiction of the state court and finding that the federal court had no jurisdiction over an action for a deficiency after a sheriff's sale of a vessel because the parties only sought to enforce their private contractual arrangement and no issue of federal law existed). Obviously the statute was created to allow a Federal Court jurisdiction over both a plaintiff's foreclosure action and action on a note and/or guaranty to recover any deficiency.

Further, it is well established that a creditor can obtain judgment against a borrower without looking to the collateral securing the borrower's obligation.  See First Republic Corp. of America v. Baybank, 424 Mass. 704, 707-708 (1997) (secured creditor was entitled to obtain judgment against the borrower without looking to the collateral as the creditor had no obligation to do so); Rockland-Atlas National Bank of Boston v. Barry, 336 Mass. 220, 222-223 (1957) (same).  In fact, the Defendants in this action specifically agreed that the Plaintiff could pursue its rights under the Promissory Note and Commercial Guaranties without seeking to enforce same against the Collateral.  See Promissory Note attached to the Complaint as Exhibit A (hereinafter "Promissory Note"), "Waivers and General Provisions" (the Lender may "release any party or guarantor or collateral; or . . . fail to realize upon or perfect Lender's security interest in the Collateral"); and Commercial Guaranties, attached to the Complaint as Exhibits C, E, G, I, K, M (hereinafter "Commercial Guaranties"), "Guarantor's Waivers" (guarantors waived any right to require the Bank "to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; to proceed directly against or exhaust any

collateral held by [the Bank] from [Bowditch], any other guarantor, or any other person . . .; [and] to pursue any other remedy within [the Bank's] power ").

Because the Plaintiff does not seek (and is not required to seek) to enforce the terms and conditions of the First Preferred Mortgage, and is only seeking to enforce its private contractual relationship with the Defendants under the Promissory Note and Commercial Guaranties, the jurisdiction of this Court pursuant to 46 U.S.C. § 31325 is not triggered and this case could be remanded to the state court. If however, this Court finds it does have jurisdiction over this action, the Defendants' Motions to Dismiss should be denied, as discussed below.[1]

**B.      Venue in Suffolk Superior Court Was Proper**

The Defendants appear to argue that venue in Suffolk Superior Court, pursuant to M.G.L. c. 223, § 1, was improper because the venue determination is based upon the principal place of business of the Plaintiff's predecessor in interest, First Essex Bank, N.A. This argument is without merit. First Essex Bank, N.A. has merged with the Plaintiff and is no longer an existing entity. The Plaintiff is the real party in interest and as such was permitted to file this action in the district where it has a usual place of business, Suffolk County. See M.G.L. c. 223, § 1 ("an action may be brought in the county where one [of the parties] lives or has his usual place of business"). Further, pursuant to the terms of the Promissory Note and Commercial Guaranties, the Defendants agreed that they are obligated to First Essex Bank, F.S.B. or its order, which is the Plaintiff. See Promissory Note and Commercial Guaranties. Finally, the Defendants argument is moot since the Defendants have removed this action to this Court believing it to be the proper venue and thus have selected the existing venue.

---

[1] Plaintiff is content with this forum.

**C.    Process and Service of Process Was Sufficient as to Defendants, Blair, Salem, Goldeneye, Salem Whale Watch and Lake Champlain**

**a.    Process Was In Compliance With Mass.R.Civ.P. 4**

Process and service of process on the Defendants were proper.  In the motions to dismiss, the Defendants have failed to allege specific facts, or provide support therefor, why service was improper, but instead merely cite to various rules of Massachusetts Civil Procedure.  The Plaintiff has provided the Superior Court with original summonses with returns of service thereon evidencing proper service, thus the Plaintiff has met its burden of proving proper service.

Since the Defendants received service of process prior to this action's removal to this Court, the Massachusetts Rules of Civil Procedure govern process and service thereof.  See Fed.R.Civ.P. 81; Romo v. Gulf Stream Coach, Inc., 250 F.3d 1119, 1122 (7th Cir. 2001) (state court procedures govern actions taken pre-removal).  Pursuant to Mass.R.Civ.P. 4(b) Blair, Salem and Goldeneye were properly served with a Summons and Order of Notice in compliance with Mass.R.Civ.P. 4.  See Summons and Order of Notice and Officer's Returns of Service thereon attached hereto as Exhibits 2, 3 and 4.  This form, which is issued and completed in its entirety by the clerk of the Suffolk Superior Court, is a summons which also informs the defendants that a hearing, in this case on Plaintiffs' motions for real estate attachments, will take place.  This Summons and Order of Notice meets all of the requirements of Mass.R.Civ.P. 4(b), specifically that it bears the signature of the clerk; is under the seal of the court; is in the name of the Commonwealth of Massachusetts; bears teste of the first justice of the court to which it shall be returnable; contains the name of the court and the names of the parties; is directed to the defendants; states the name and address of the plaintiff's attorney, and the time within which these rules require the defendants to appear and defend; and notifies them that in case of their

failure to do so judgment by default may be rendered against them for the relief demanded in the complaint.  See Mass.R.Civ.P. 4(b).  This process was in compliance with Mass.R.Civ.P. 4(b).

      **b.**      **Service of Process was in Compliance with Mass.R.Civ.P. 4**

Blair, Salem, Goldeneye, Salem Whale Watch and Lake Champlain were properly served with process pursuant to Mass.R.Civ.P. 4(d) and the motions to dismiss fail to allege why service was improper.  On March 22, 2005, the Defendant, Goldeneye Corporation, was served by delivering a copy in hand of the complaint, Summons and Order of Notice and other supporting pleadings to the resident agent as designated by Goldeneye with the Secretary of the Commonwealth of Massachusetts, Robert E. Blair, Jr.  See Exhibit 4 hereto.  This service was proper pursuant to Mass.R.Civ.P. 4(d)(2) (service shall be made "by delivering a copy of the summons and of the complaint to . . . a managing or general agent . . or . . . to any other agent authorized by appointment or by law to receive service of process").

On March 18, 2005, the defendants, Blair and Salem, were served by delivering a copy of the complaint, Summons and Order of Notice and other supporting pleadings to their last and usual places of residence using the addresses they themselves provided to the Bank.  See Complaint ¶ ¶ 3 and 4; Exhibits 2 and 3 hereto.  This service was proper pursuant to Mass.R.Civ.P. 4(d)(1) (service shall be made upon an individual "by delivering a copy of the summons and of the complaint . . . by leaving copies thereof at his last and usual place of abode").

On March 23, 2005, Salem Whale Watch was served by delivering a copy of the complaint, Summons and other supporting pleadings to the last and usual place of abode of the resident agent it designated with the Secretary of the Commonwealth, Robert J. Salem, See Exhibit 5 hereto.  This service was proper pursuant to Mass.R.Civ.P. 4(d)(2) (service shall be

made "by delivering a copy of the summons and of the complaint to . . . a managing or general

agent . . or . . . to any other agent authorized by appointment or by law to receive service of

process"). See also Conant v. Kantrovitz, P.C., 29 Mass. App. Ct. 998, 999 (1990) (holding

service of process on a corporation was sufficient by leaving the summons and complaint at the

last and usual place of residence of the officer of the corporation).

In addition, Lake Champlain was properly served pursuant to M.G.L. c. 223A, § 6 and

Mass.R.Civ.P. 4(e), by certified mail "addressed to the person to be served and requiring a

signed receipt." This service was properly evidenced as required by M.G.L. c. 223A, § 6 by the

Affidavit of Service filed with the Suffolk Superior Court and attached hereto as Exhibit 6.

**c.     Service Was Proper Pursuant to Mass.R.Civ.P. 4.1**

Defendants fail to allege why service was improper under Mass.R.Civ.P. 4.1(c). Pursuant

to that Rule, Blair, Salem and Goldeneye were properly served with the Plaintiffs' Motions for

Real Estate Attachments and Supporting Affidavit at the time the Summons and Order of Notice

was served as indicated on the Officer's Returns of Service. See Exhibits 2, 3 and 4 hereto. This

service was in compliance with Mass.R.Civ.P. 4.1(c). Further, the defendants waived any

objections they may have had to such service by failing to raise the objections at the Superior

Court's hearing on Plaintiff's Motions for Real Estate Attachments.

Since Salem, Goldeneye and Salem Whale Watch were served within the

Commonwealth, the Plaintiff is unable to determine the purpose of the defendants' reference to

Mass.R.Civ.P. 4(e) in the motions to dismiss filed by these defendants. Further, the time for

service of the Summons and the Complaint has not yet passed pursuant to Fed.R.Civ.P. 4(j). If

the defendants establish that service was improper in any way, Plaintiff should be afforded the

opportunity to re-serve the defendants. If this Court finds that process or service of process was

deficient in any way, the Plaintiff requests that this Court allow the Plaintiff to re-serve the defendants to cure any deficiency that may exist and deny the Defendants' motions to dismiss on this ground.  This may be a moot point, however, since all of the Defendants have filed an appearance in this matter through their counsel.

### D.    This Court has Personal Jurisdiction Over Lake Champlain

This Court has jurisdiction over Lake Champlain because it consented to jurisdiction in the Commonwealth of Massachusetts by signing the Commercial Guaranty.  See Guaranty p. 3. "A party to a contract may waive its right to challenge personal jurisdiction by consenting to personal jurisdiction in a forum selection clause."  Inso Corp. v. Dekotec Handelsges, 999 F.Supp 165, 166 (D. Mass. 1998) (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 11 (1972) (holding that contractual consent to a certain judicial forum gave rise to personal jurisdiction over the parties in courts of that forum).  See also Cashman Equip. Corp. v. Kimmins Contr. Corp., 2004 U.S. Dist. LEXIS 44 (D. Mass., 2004) (federal court had jurisdiction over out-of state defendant because it consented to the jurisdiction of the courts of Massachusetts); Citizen's Bank v. West Shore Surgical Assoc. LLC, 15 Mass. L. Rep. 514 (2002) (holding that a party's consent to venue in a finance lease agreement also constituted consent to jurisdiction of the courts of Massachusetts).  This Court has personal jurisdiction over Lake Champlain.

### E.    A More Definite Statement is not Required

A more definite statement is not required.  It is clear from the face of the Complaint, that the Plaintiff seeks to enforce the terms and condition of the Promissory Note and Commercial Guaranties pursuant to the seven counts of the Complaint.  See Complaint.  The Defendants appear to request a more definite statement regarding the demand letters issued by the Plaintiff. Pursuant to the terms of the Promissory Note and Commercial Guaranties, the Defendants

waived all rights they had to receive demand prior to the Plaintiff seeking to enforce its rights and remedies pursuant to the Promissory Note and Commercial Guaranties.  See Promissory Note "Waivers and General Provisions" and Commercial Guaranties "Guarantor's Waivers." Therefore, because demand was not required, demand is not an element of the Plaintiff's case and a more definite statement regarding the demand is not necessary.  See Moore v. Fidelity Financial Services, Inc., 869 F.Supp. 557, 559-560 (N.D. Ill. 1994) (motions for more definite statement are disfavored and should not be granted unless the complaint is "so unintelligible that the defendant cannot draft a responsive pleading"); Merrill Lynch Mortgage Corporation v. Narayan, 908 F.2d 246, 251-252 (7th Cir. 1990) (a motion for a more definite statement may not be used to avoid filing an answer to the complaint).  Because the complaint specifically sets out the existence of the Promissory Note and the Commercial Guaranties and the defaults thereunder, a more definite statement is not required and the motions by the Defendants should be denied.

WHEREFORE the Plaintiff, Sovereign Bank, respectfully requests that this Court deny the six motions to dismiss filed by the Defendants in their entirety, enter sanctions and if this case is remanded, order the Defendants to pay the Plaintiff $1,500.00 in legal fees.

Dated:  May 4, 2005

Sovereign Bank, successor by merger with First Essex Bank, F.S.B.

By its Attorney,

RIEMER & BRAUNSTEIN LLP


/s/ Meegan B. Casey_____
Meegan B. Casey
BBO #648526
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts 02108
(617) 523-9000


## CERTIFICATE OF SERVICE

I, Meegan B. Casey, hereby certify that a true copy of the above document was served upon the attorney of record for each party as indicated below by mail on this date, May 4, 2005.

Brian Flanagan, Esquire
Flanagan & Hunter, P.C.
88 Black Falcon Avenue, Suite 274
Boston, Massachusetts 02210

Stephen M. Ouellette, Esquire
Cianciulli and Oellette
163 Cabot Street
Beverly, Massachusetts 01915


/s/ Meegan B. Casey
Meegan B. Casey

58025.524.890164.1

**EXHIBIT 1**

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.

SUPERIOR COURT
CIVIL ACTION NO.

---

SOVEREIGN BANK, SUCCESSOR BY
MERGER WITH FIRST ESSEX BANK,
F.S.B.,

Plaintiff,

v.

BOWDITCH BOAT HOLDING, LLC;
GOLDENEYE CORPORATION; SALEM
WHALE WATCH & CRUISE
COMPANY, LLC; LAKE CHAMPLAIN
TRANSPORTATION COMPANY;
ROBERT E. BLAIR, JR.; ROBERT J.
SALEM AND HENRY LORD,

Defendants.

05-1021

**COMPLAINT**

---

## INTRODUCTION

The Plaintiff, Sovereign Bank, successor by merger with First Essex Bank, F.S.B. (the "Bank"), brings this action to enforce the terms and conditions of a certain Commercial Promissory Note dated June 14, 2000 in the original principal amount of $290,000.00 made by Bowditch Boat Holdings LLC payable to the Bank, as modified. The Bank also seeks to enforce the terms and conditions of various Commercial Guaranties executed by the remaining defendants by which they absolutely and unconditionally guarantied the indebtedness of Bowditch Boat Holdings LLC to the Bank.

## PARTIES

1.  The Plaintiff, Sovereign Bank, successor by merger with First Essex Bank, F.S.B. (the "Bank"), is a federal savings bank, duly organized and existing under the laws of the United States of America, with a usual place of business at 75 State Street, Boston, Suffolk County, Massachusetts.

2.    The Defendant, Bowditch Boat Holdings LLC (the "Borrower"), is a Massachusetts limited liability company with a usual place of business at 4 Blaney Street, Salem, Massachusetts.

3.    The Defendant, Robert E. Blair, Jr. ("Blair"), is an individual with a usual place of residence at 39 Kittery Avenue, Rowley, Massachusetts.

4.    The Defendant, Robert J. Salem ("Salem"), is an individual with a usual place of residence at 323 Concord Street, Gloucester, Massachusetts.

5.    The Defendant, Henry J. Lord ("Lord"), is an individual with a usual place of residence at 6134 Barroll Road, Baltimore, Maryland.

6.    The Defendant, Goldeneye Corporation ("Goldeneye"), is a corporation organized and existing under the laws of Maryland and authorized to do business in Massachusetts with a usual place of business at 6225 Smith Avenue, Baltimore, Maryland.

7.    The Defendant, Salem Whale Watch and Cruise Company LLC ("Salem Whale Watch"), is a Delaware limited liability company authorized to do business in Massachusetts with a usual place of business at 4 Blaney Street, Suite 1, Salem, Massachusetts.

8.    The Defendant, Lake Champlain Transportation Company ("Lake Champlain"), is a Vermont Corporation with a usual place of business at King Street Dock, Burlington, Vermont.

## COUNT I

### (v. Borrower to Enforce the Note)

9.    The Bank realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 8 above.

10.    On June 14, 2000, the Borrower executed and delivered to First Essex Bank, F.S.B., a Commercial Promissory Note (the "Note") in the original principal amount of

$290,000.00.  A true and accurate copy of the Note is attached hereto and incorporated herein by reference as **Exhibit A**.

11.    On November 30, 2000, April 14, 2002, June 3, 2003 and August 8, 2003, the Borrower and First Essex Bank, F.S.B. entered into certain Change in Terms Agreements modifying, *inter alia*, certain payment terms of the Note.

12.    Sovereign Bank holds the Note, as modified, as successor by merger with First Essex Bank, F.S.B.

13.    The Borrower defaulted under the terms and conditions of the Note, as modified, by, *inter alia*, failing to make payments as and when due.

14.    As a result of the defaults, on March 9, 2005, the Bank made demand on the Borrower for all amounts due and owing under the Note.  A true and accurate copy of the Demand is attached hereto and incorporated herein by reference as **Exhibit B**.

15.    The Borrower failed and refused and continues to fail and refuse to respond to the demand.

16.    Therefore, the Borrower is liable to the Bank in the principal amount of $180,009.56, interest in the amount of $15,977.05 as of March 15, 2005 and thereafter accruing, late fees in the amount of $2,381.72 as of March 15, 2005 and thereafter accruing, plus all costs and attorneys' fees incurred by the Bank in enforcing its rights under the Note.

## COUNT II

### (v. Blair to Enforce the Guaranty)

17.    The Bank realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 16 above.

3

18.    On June 14, 2000, Blair executed and delivered to the Bank a Commercial Guaranty whereby he absolutely and unconditionally guarantied the Borrower's indebtedness to the Bank. A true and accurate copy of the Guaranty is attached hereto and incorporated herein by reference as **Exhibit C**.

19.    Sovereign Bank holds the Guaranty as successor by merger with First Essex Bank, F.S.B.

20.    The Borrower defaulted under the terms and conditions of the Note, as modified, as set forth above.

21.    Accordingly, on March 9, 2005, the Bank advised Blair of the defaults and made demand for the full amount due under the Commercial Guaranty. A true and accurate copy of the Demand is attached hereto and incorporated herein by reference as **Exhibit D**.

22.    Blair failed and refused and continues to fail and refuse to respond to the Demand.

23.    Therefore, Blair is liable to the Bank in the principal amount of $180,009.56, interest in the amount of $15,977.05 as of March 15, 2005 and thereafter accruing, late fees in the amount of $2,381.72 as of March 15, 2005 and thereafter accruing, plus all costs and attorneys' fees incurred by the Bank in enforcing its rights under the Guaranty.

## COUNT III

### (v. Salem to Enforce the Guaranty)

24.    The Bank realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 23 above.

25.    On June 14, 2000, Salem executed and delivered to the Bank a Commercial Guaranty whereby he absolutely and unconditionally guarantied the Borrower's indebtedness to

the Bank. A true and accurate copy of the Guaranty is attached hereto and incorporated herein by reference as **Exhibit E**.

26. Sovereign Bank holds the Guaranty as successor by merger with First Essex Bank, F.S.B.

27. The Borrower defaulted under the terms and conditions of the Note, as modified, as set forth above.

28. Accordingly, on March 9, 2005, the Bank advised Salem of the defaults and made demand for the full amount due under the Commercial Guaranty. A true and accurate copy of the Demand is attached hereto and incorporated herein by reference as **Exhibit F**.

29. Salem failed and refused and continues to fail and refuse to respond to the Demand.

30. Therefore, Salem is liable to the Bank in the principal amount of $180,009.56, interest in the amount of $15,977.05 as of March 15, 2005 and thereafter accruing, late fees in the amount of $2,381.72 as of March 15, 2005 and thereafter accruing, plus all costs and attorneys' fees incurred by the Bank in enforcing its rights under the Guaranty.

## COUNT IV

### (v. Lord to Enforce the Guaranty)

31. The Bank realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 30 above.

32. On June 15, 2000, Lord executed and delivered to the Bank a Commercial Guaranty whereby he absolutely and unconditionally guarantied the Borrower's indebtedness to the Bank. A true and accurate copy of the Guaranty is attached hereto and incorporated herein by reference as **Exhibit G**.

33.    Sovereign Bank holds the Guaranty as successor by merger with First Essex Bank, F.S.B.

34.    The Borrower defaulted under the terms and conditions of the Note, as modified, as set forth above.

35.    Accordingly, on March 9, 2005, the Bank advised Lord of the defaults and made demand for the full amount due under the Commercial Guaranty.  A true and accurate copy of the Demand is attached hereto and incorporated herein by reference as **Exhibit H**.

36.    Lord failed and refused and continues to fail and refuse to respond to the Demand.

37.    Therefore, Lord is liable to the Bank in the principal amount of $180,009.56, interest in the amount of $15,977.05 as of March 15, 2005 and thereafter accruing, late fees in the amount of $2,381.72 as of March 15, 2005 and thereafter accruing, plus all costs and attorneys' fees incurred by the Bank in enforcing its rights under the Guaranty.

## COUNT V

### (v. Goldeneye to Enforce the Guaranty)

38.    The Bank realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 37 above.

39.    On June 14, 2000, Goldeneye executed and delivered to the Bank a Commercial Guaranty whereby it absolutely and unconditionally guarantied the Borrower's indebtedness to the Bank.  A true and accurate copy of the Guaranty is attached hereto and incorporated herein by reference as **Exhibit I**.

40.    Sovereign Bank holds the Guaranty as successor by merger with First Essex Bank, F.S.B.

41. The Borrower defaulted under the terms and conditions of the Note, as modified, as set forth above.

42. Accordingly, on March 9, 2005, the Bank advised Goldeneye of the defaults and made demand for the full amount due under the Commercial Guaranty. A true and accurate copy of the Demand is attached hereto and incorporated herein by reference as **Exhibit J**.

43. Goldeneye failed and refused and continues to fail and refuse to respond to the Demand.

44. Therefore, Goldeneye is liable to the Bank in the principal amount of $180,009.56, interest in the amount of $15,977.05 as of March 15, 2005 and thereafter accruing, late fees in the amount of $2,381.72 as of March 15, 2005 and thereafter accruing, plus all costs and attorneys' fees incurred by the Bank in enforcing its rights under the Guaranty.

## COUNT VI

### (v. Salem Whale Watch to Enforce the Guaranty)

45. The Bank realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 44 above.

46. On June 14, 2000, Salem Whale Watch executed and delivered to the Bank a Commercial Guaranty whereby it absolutely and unconditionally guarantied the Borrower's indebtedness to the Bank. A true and accurate copy of the Guaranty is attached hereto and incorporated herein by reference as **Exhibit K**.

47. Sovereign Bank holds the Guaranty as successor by merger with First Essex Bank, F.S.B.

48. The Borrower defaulted under the terms and conditions of the Note, as modified, as set forth above.

49.    Accordingly, on March 9, 2005, the Bank advised Salem Whale Watch of the defaults and made demand for the full amount due under the Commercial Guaranty. A true and accurate copy of the Demand is attached hereto and incorporated herein by reference as **Exhibit L**.

50.    Salem Whale Watch failed and refused and continues to fail and refuse to respond to the Demand.

51.    Therefore, Salem Whale Watch is liable to the Bank in the principal amount of $180,009.56, interest in the amount of $15,977.05 as of March 15, 2005 and thereafter accruing, late fees in the amount of $2,381.72 as of March 15, 2005 and thereafter accruing, plus all costs and attorneys' fees incurred by the Bank in enforcing its rights under the Guaranty.

## COUNT VII

### (v. Lake Champlain to Enforce the Guaranty)

52.    The Bank realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 51 above.

53.    On June 15, 2000, Lake Champlain executed and delivered to the Bank a Commercial Guaranty whereby it absolutely and unconditionally guarantied the Borrower's indebtedness to the Bank. A true and accurate copy of the Guaranty is attached hereto and incorporated herein by reference as **Exhibit M**.

54.    Sovereign Bank holds the Guaranty as successor by merger with First Essex Bank, F.S.B.

55.    The Borrower defaulted under the terms and conditions of the Note, as modified, as set forth above.

56.     Accordingly, on March 9, 2005, the Bank advised Lake Champlain of the defaults and made demand for the full amount due under the Commercial Guaranty.  A true and accurate copy of the Demand is attached hereto and incorporated herein by reference as **Exhibit N**.

57.     Lake Champlain failed and refused and continues to fail and refuse to respond to the Demand.

58.     Therefore, Lake Champlain is liable to the Bank in the principal amount of $180,009.56, interest in the amount of $15,977.05 as of March 15, 2005 and thereafter accruing, late fees in the amount of $2,381.72 as of March 15, 2005 and thereafter accruing, plus all costs and attorneys' fees incurred by the Bank in enforcing its rights under the Guaranty.

## PRAYERS FOR RELIEF

WHEREFORE, the Plaintiff, Sovereign Bank successor by merger with First Essex Bank, F.S.B., prays for the following relief:

1.     That Judgment enter in favor of the Plaintiff, Sovereign Bank successor by merger with First Essex Bank, F.S.B., and against the Defendant, Bowditch Boat Holdings LLC, in the principal amount of $180,009.56, interest in the amount of $15,977.05 as of March 15, 2005 and thereafter accruing, late fees in the amount of $2,381.72 as of March 15, 2005 and thereafter accruing, plus all costs and attorneys' fees incurred by the Bank in enforcing its rights under the Note pursuant to Count I of the Complaint;

2.     That Judgment enter in favor of the Plaintiff, Sovereign Bank successor by merger with First Essex Bank, F.S.B., and against the Defendant, Robert E. Blair, Jr., in the principal amount of $180,009.56, interest in the amount of $15,977.05 as of March 15, 2005 and thereafter accruing, late fees in the amount of $2,381.72 as of March 15, 2005 and thereafter

accruing, plus all costs and attorneys' fees incurred by the Bank in enforcing its rights under the Guaranty pursuant to Count II of the Complaint;

    3.    That Judgment enter in favor of the Plaintiff, Sovereign Bank successor by merger with First Essex Bank, F.S.B., and against the Defendant, Robert J. Salem, in the principal amount of $180,009.56, interest in the amount of $15,977.05 as of March 15, 2005 and thereafter accruing, late fees in the amount of $2,381.72 as of March 15, 2005 and thereafter accruing, plus all costs and attorneys' fees incurred by the Bank in enforcing its rights under the Guaranty pursuant to Count III of the Complaint;

    4.    That Judgment enter in favor of the Plaintiff, Sovereign Bank successor by merger with First Essex Bank, F.S.B., and against the Defendant, Henry Lord, in the principal amount of $180,009.56, interest in the amount of $15,977.05 as of March 15, 2005 and thereafter accruing, late fees in the amount of $2,381.72 as of March 15, 2005 and thereafter accruing, plus all costs and attorneys' fees incurred by the Bank in enforcing its rights under the Guaranty pursuant to Count IV of the Complaint;

    5.    That Judgment enter in favor of the Plaintiff, Sovereign Bank successor by merger with First Essex Bank, F.S.B., and against the Defendant, Goldeneye Corporation, in the principal amount of $180,009.56, interest in the amount of $15,977.05 as of March 15, 2005 and thereafter accruing, late fees in the amount of $2,381.72 as of March 15, 2005 and thereafter accruing, plus all costs and attorneys' fees incurred by the Bank in enforcing its rights under the Guaranty pursuant to Count V of the Complaint;

    6.    That Judgment enter in favor of the Plaintiff, Sovereign Bank successor by merger with First Essex Bank, F.S.B., and against the Defendant, Salem Whale Watch & Cruise Company LLC, in the principal amount of $180,009.56, interest in the amount of $15,977.05 as

of March 15, 2005 and thereafter accruing, late fees in the amount of $2,381.72 as of March 15, 2005 and thereafter accruing, plus all costs and attorneys' fees incurred by the Bank in enforcing its rights under the Guaranty pursuant to Count VI of the Complaint;

      7.    That Judgment enter in favor of the Plaintiff, Sovereign Bank successor by merger with First Essex Bank, F.S.B., and against the Defendant, Lake Champlain Transportation Company, in the principal amount of $180,009.56, interest in the amount of $15,977.05 as of March 15, 2005 and thereafter accruing, late fees in the amount of $2,381.72 as of March 15, 2005 and thereafter accruing, plus all costs and attorneys' fees incurred by the Bank in enforcing its rights under the Guaranty pursuant to Count VII of the Complaint; and

      8.    For such other and further relief as this court deems just and equitable.

SOVEREIGN BANK, SUCCESSOR BY
MERGER WITH FIRST ESSEX BANK, F.S.B.

By its Attorney,
RIEMER & BRAUNSTEIN LLP

Dated: March 16, 2005

Meegan B. Casey
BBO #648526
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts 02108
(617) 523-9000

11

## PLAINTIFF'S VERIFIED AD DAMNUM PURSUANT TO
## MASSACHUSETTS GENERAL LAW, CHAPTER 231, SECTION 13B

I, Bret E. Bokelkamp, Vice President of Sovereign Bank, successor by merger with First Essex Bank, F.S.B. (the "Bank"), having personal knowledge of the facts pertaining to the above-captioned case, and based upon the Bank's books and records kept in the ordinary course of business, being duly sworn on oath, do hereby state that as of March 15, 2005 the total amount of loss sustained by the Bank, and due and owing from Defendants, jointly and severally, Bowditch Boat Holdings LLC, Robert E. Blair, Jr., Robert J. Salem, Henry Lord, Goldeneye Corporation, Salem Whale Watch & Cruise Company LLC, and Lake Champlain Transportation Company is the principal amount of $180,009.56, interest in the amount of $15,977.05 and thereafter accruing, late fees in the amount of $2,381.72 and thereafter accruing, plus all costs and attorneys' fees incurred by the Bank in enforcing its rights under the Commercial Promissory Note, and Commercial Guaranties.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS _10th_ DAY OF MARCH, 2005.

Bret E. Bokelkamp
Assistant Vice President
Sovereign Bank

58025.524.878841.1

12

**EXHIBIT A**

**To**

**EXHIBIT 1**

# PROMISSORY NOTE

| Borrower: | Bowditch Boat Holdings, LLC | Lender: | First Essex Bank, FSB |
|---|---|---|---|
| | 4 Blaney Street | | 296 Essex Street |
| | Salem, MA 01970 | | Lawrence, MA 01842 |

**Principal Amount: $290,000.00**          **Initial Rate: 10.500%**          **Date of Note: June 14, 2000**

**PROMISE TO PAY.** Bowditch Boat Holdings, LLC ("Borrower") promises to pay to First Essex Bank, FSB ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Ninety Thousand & 00/100 Dollars ($290,000.00), together with interest on the unpaid principal balance from June 14, 2000, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in 119 principal payments of $2,417.00 each and one final principal and interest payment of $2,398.49. Borrower's first principal payment is due July 14, 2000, and all subsequent principal payments are due on the same day of each month after that. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date. Borrower's first interest payment is due July 14, 2000, and all subsequent interest payments are due on the same day of each month after that. Borrower's final payment due June 14, 2010, will be for all principal and accrued interest not yet paid. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid collection costs and any late charges, then to any unpaid interest, and any remaining amount to principal.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Prime Rate as published in the Wall Street Journal (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. Lender will tell Borrower the current index rate upon Borrower's request. Borrower understands that Lender may make loans based on other rates as well. The interest rate change will not occur more often than each day. The Index currently is 9.500% per annum. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate of 1.000 percentage point over the Index, resulting in an initial rate of 10.500% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, they will reduce the principal balance due and may result in Borrower making fewer payments.

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**DEFAULT.** Borrower will be in default if any of the following happens: (a) Borrower fails to make any payment when due. (b) Borrower breaks any promise Borrower has made to Lender, or Borrower fails to comply with or to perform when due any other term, obligation, covenant, or condition contained in this Note or any agreement related to this Note, or in any other agreement or loan Borrower has with Lender. (c) Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the Related Documents. (d) Any representation or statement made or furnished to Lender by Borrower or on Borrower's behalf is false or misleading in any material respect either now or at the time made or furnished. (e) Borrower dissolves (regardless of whether election to continue is made), any member withdraws from Borrower, any member dies, or any of the members or Borrower becomes insolvent, a receiver is appointed for any part of Borrower's property, Borrower makes an assignment for the benefit of creditors, or any proceeding is commenced either by Borrower or against Borrower under any bankruptcy or insolvency laws. (f) Any creditor tries to take any of Borrower's property on or in which Lender has a lien or security interest. This includes a garnishment of any of Borrower's accounts with Lender. (g) Any guarantor dies or any of the other events described in this default section occurs with respect to any guarantor of this Note. (h) A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired. (i) Lender in good faith deems itself insecure.

If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured (and no event of default will have occurred) if Borrower, after receiving written notice from Lender demanding cure of such default: (a) cures the default within thirty (30) days; or (b) if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, without notice, and then Borrower will pay that amount. Upon default, including failure to pay upon final maturity, Lender, at its option, may also, if permitted under applicable law, increase the variable interest rate on this Note to 3.000 percentage points over the Index. The interest rate will not exceed the maximum rate permitted by applicable law. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower also will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law. This Note has been delivered to Lender and accepted by Lender in the Commonwealth of Massachusetts. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Essex County, the Commonwealth of Massachusetts. Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other. This Note shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

**RIGHT OF SETOFF.** Borrower grants to Lender a contractual security interest in, and hereby assigns, conveys, delivers, pledges, and transfers to Lender all Borrower's right, title and interest in and to, Borrower's accounts with Lender (whether checking, savings, or some other account), including without limitation all accounts held jointly with someone else and all accounts Borrower may open in the future, excluding however all IRA and Keogh accounts, and all trust accounts for which the grant of a security interest would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on this Note against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided on this paragraph.

05    2000                              **PROMISSORY NOTE**                              Page 2
                                            (Continued)

**WAIVERS AND GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, protest and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. To the extent permitted by applicable law, all such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan, or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. THIS NOTE IS EXECUTED UNDER SEAL. BORROWER AGREES TO THE TERMS OF THE NOTE AND ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THE NOTE.**

BORROWER:

Bowditch Boat Holdings, LLC  By its Manager,
Goldeneye Corporation

By: _____

    Robert J. Salem, Manager President and Treasurer,
    Authorized Person

Signed, acknowledged and delivered in the presence of:

X _____
  Witness

X _____
  (Witness

**EXHIBIT B**

**To**

**EXHIBIT 1**

## RIEMER & BRAUNSTEIN LLP

### COUNSELORS AT LAW

Three Center Plaza · Boston, Massachusetts 02108-2003

(617) 523-9000 · Fax (617) 880-3456

E-Mail firm@riemerlaw.com

Mark S. Scott
Direct Dial: (617) 880-3452
Writer's Direct Fax: (617) 692-3452
E-Mail: mscott@riemerlaw.com

New York, New York
(212) 302-8880 · Fax (212) 789-3100
Burlington, Massachusetts
(781) 273-2270 · Fax (781) 273-0776

**Certified Article Number**

**7160 3901 9848 7661 6514**

**SENDERS RECORD**

March 10, 2005

**VIA CERTIFIED MAIL/
RETURN RECEIPT REQUESTED
AND FIRST CLASS MAIL**

Bowditch Boat Holdings, LLC
4 Blaney Street
Salem, Massachusetts 01970
Attention:  Mr. Robert J. Salem

Re:    **Loan Arrangement with Sovereign Bank, successor by merger with First Essex Bank, FSB**

Dear Mr. Salem:

Please be advised that this firm is counsel to Sovereign Bank, successor by merger with First Essex Bank, FSB (the **"Bank"**), in connection with a certain loan arrangement (the **"Loan Arrangement"**) entered into between the Bank and Bowditch Boat Holdings, LLC (the **"Borrower"**).

The Loan Arrangement is evidenced by, among other documents, instruments and agreements, the following (collectively, the **"Loan Documents"**): (i) a certain Promissory Note dated June 14, 2000 made by the Borrower payable to the Bank in the original principal amount of $290,000.00, as amended by that certain Change in Terms Agreement dated November 30, 2000, and as further amended by that certain Change in Terms Agreement dated August 8, 2003, (ii) a certain Commercial Security Agreement dated June 14, 2000 between the Borrower and the Bank, (iii) a certain Business Loan Agreement dated June 14, 2000 between the Borrower and the Bank, and (iv) a certain First Preferred Mortgage dated June 19, 2000 granted by the Borrower to the Bank.

Please be advised that certain defaults have occurred under the Loan Documents.  Accordingly, the Bank hereby makes **DEMAND** upon the Borrower for payment in full of all amounts due under the Loan Documents, including without limitation, all principal, interest (accrued and hereafter accruing), fees, costs, expenses, and costs of collection (including attorneys' fees).

Bowditch Boat Holdings, LLC
March 10, 2005
Page 2

**PLEASE TAKE FURTHER NOTICE** that if all amounts due pursuant to the Loan Documents are not paid in full forthwith, the Bank may commence all appropriate action to collect the outstanding indebtedness without further notice to the Borrower.

**PLEASE TAKE FURTHER NOTICE** that the Bank hereby expressly reserves the right from and after the date of this notice to accept one or more payments from the Borrower or on behalf of the Borrower, and to apply any such amounts in reduction of the outstanding indebtedness under the Loan Documents. The acceptance of any such payment shall not constitute a waiver of any defaults, whether now existing or hereafter arising, or a waiver of the Bank's demand for immediate payment in full. Further, the Bank hereby expressly reserves all of its rights and remedies in this matter and confirms that the terms and conditions of the existing documents, instruments, and agreements remain in full force and effect.

Your prompt attention to this matter is anticipated.

Very truly yours,

Mark S. Scott

cc:    Mr. Bret Bokelkamp (via telecopier)
       Barry G. Braunstein, Esquire
       Goldeneye Corporation
       Salem Whale Watch & Cruise Company, LLC
       Lake Champlain Transportation Company
       Mr. Robert E. Blair, Jr.
       Mr. Robert J. Salem
       Mr. Henry Lord

862819.1

*RIEMER & BRAUNSTEIN* LLP
COUNSELORS AT LAW

**EXHIBIT C**

**To**

**EXHIBIT 1**

# COMMERCIAL GUARAN

**Borrower:** Bowditch Boat Holdings, LLC
4 Blaney Street
Salem, MA 01970

**Lender:** First Essex Bank, FSB
296 Essex Street
Lawrence, MA 01842

**Guarantor:** Robert E. Blair, Jr.

**AMOUNT OF GUARANTY.** The amount of this Guaranty is Unlimited.

**CONTINUING UNLIMITED GUARANTY.** For good and valuable consideration, Robert E. Blair, Jr. ("Guarantor") absolutely and unconditionally guarantees and promises to pay to First Essex Bank, FSB ("Lender") or its order, in legal tender of the United States of America, the Indebtedness (as that term is defined below) of Bowditch Boat Holdings, LLC ("Borrower") to Lender on the terms and conditions set forth in this Guaranty. Under this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing.

**DEFINITIONS.** The following words shall have the following meanings when used in this Guaranty:

**Borrower.** The word "Borrower" means Bowditch Boat Holdings, LLC.

**Guarantor.** The word "Guarantor" means Robert E. Blair, Jr.

**Guaranty.** The word "Guaranty" means this Guaranty made by Guarantor for the benefit of Lender dated June 14, 2000.

**Indebtedness.** The word "Indebtedness" is used in its most comprehensive sense and means and includes any and all of Borrower's liabilities, obligations, debts, and indebtedness to Lender, now existing or hereinafter incurred or created, including, without limitation, all loans, advances, interest, costs, debts, overdraft indebtedness, credit card indebtedness, lease obligations, other obligations, and liabilities of Borrower, or any of them, and any present or future judgments against Borrower, or any of them; and whether any such Indebtedness is voluntarily or involuntarily incurred, due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined; whether Borrower may be liable individually or jointly with others, or primarily or secondarily, or as guarantor or surety; whether recovery on the Indebtedness may be or may become barred or unenforceable against Borrower for any reason whatsoever; and whether the Indebtedness arises from transactions which may be voidable on account of infancy, insanity, ultra vires, or otherwise.

**Lender.** The word "Lender" means First Essex Bank, FSB, its successors and assigns.

**Related Documents.** The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**NATURE OF GUARANTY.** Guarantor's liability under this Guaranty shall be open and continuous for so long as this Guaranty remains in force. Guarantor intends to guarantee at all times the performance and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of all Indebtedness. Accordingly, no payments made upon the Indebtedness will discharge or diminish the continuing liability of Guarantor in connection with any remaining portions of the Indebtedness or any of the Indebtedness which subsequently arises or is thereafter incurred or contracted.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all other obligations of Guarantor under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at the address of Lender listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to advances or new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. This Guaranty will continue to bind Guarantor for all Indebtedness incurred by Borrower or committed by Lender prior to receipt of Guarantor's written notice of revocation, including any extensions, renewals, substitutions or modifications of the Indebtedness. All renewals, extensions, substitutions, and modifications of the Indebtedness granted after Guarantor's revocation, are contemplated under this Guaranty and, specifically will not be considered to be new Indebtedness. This Guaranty shall bind the estate of Guarantor as to Indebtedness created both before and after the death or incapacity of Guarantor, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation received by Lender from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of Indebtedness covered by this Guaranty, and it is specifically acknowledged and agreed by Guarantor that reductions in the amount of Indebtedness, even to zero dollars ($0.00), prior to written revocation of this Guaranty by Guarantor shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the guaranteed Indebtedness remains unpaid and even though the Indebtedness guaranteed may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (a) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (b) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (c) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (d) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (e) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (f) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (g) to sell, transfer, assign, or grant participations in all or any part of the Indebtedness; and (h) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (a) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (b) this Guaranty is executed at Borrower's request and not at the request of Lender; (c) Guarantor has full power, right and authority to enter into this Guaranty; (d) the provisions of

# COMMERCIAL GUARAN
## (Continued)

this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (e) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (f) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present the financial condition of Guarantor as of the dates the financial information is provided; (g) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (h) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (i) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (j) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (a) to continue lending money or to extend other credit to Borrower; (b) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (c) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (d) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (e) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (f) to pursue any other remedy within Lender's power; or (g) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

If now or hereafter (a) Borrower shall be or become insolvent, and (b) the Indebtedness shall not at all times until paid be fully secured by collateral pledged by Borrower, Guarantor hereby forever waives and relinquishes in favor of Lender and Borrower, and their respective successors, any claim or right to payment Guarantor may now have or hereafter have or acquire against Borrower, by subrogation or otherwise, so that at no time shall Guarantor be or become a "creditor" of Borrower within the meaning of 11 U.S.C. section 547(b), or any successor provision of the Federal bankruptcy laws.

Guarantor also waives any and all rights or defenses arising by reason of (a) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (b) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (c) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (d) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (e) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced there is outstanding Indebtedness of Borrower to Lender which is not barred by any applicable statute of limitations; or (f) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**LENDER'S RIGHT OF SETOFF.** In addition to all liens upon and rights of setoff against the moneys, securities or other property of Guarantor given to Lender by law, Lender shall have, with respect to Guarantor's obligations to Lender under this Guaranty and to the extent permitted by law, a contractual security interest in and a right of setoff against, and Guarantor hereby assigns, conveys, delivers, pledges, and transfers to Lender all of Guarantor's right, title and interest in and to, all deposits, moneys, securities and other property of Guarantor now or hereafter in the possession of or on deposit with Lender, whether held in a general or special account or deposit, whether held jointly with someone else, or whether held for safekeeping or otherwise, excluding however all IRA, Keogh, and trust accounts. Every such security interest and right of setoff may be exercised without demand upon or notice to Guarantor. No security interest or right of setoff shall be deemed to have been waived by any act or conduct on the part of Lender or by any neglect to exercise such right of setoff or to enforce such security interest or by any delay in so doing. Every right of setoff and security interest shall continue in full force and effect until such right of setoff or security interest is specifically waived or released by an instrument in writing executed by Lender.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness of Borrower to Lender, whether now existing or hereafter created, shall be prior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness of Borrower to Lender. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender hereby is authorized, in the name of Guarantor, from time to time to execute and file financing statements and continuation statements and to execute such other documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

Amendments. This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Applicable Law.** This Guaranty has been delivered to Lender and accepted by Lender in the Commonwealth of Massachusetts. If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Essex County, Commonwealth of Massachusetts. Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other. This Guaranty shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (and including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Notices.** All notices required to be given by either party to the other under this Guaranty shall be in writing, may be sent by telefacsimile (unless otherwise required by law), and, except for revocation notices by Guarantor, shall be effective when actually delivered or when deposited with a nationally recognized overnight courier, or when deposited in the United States mail, first class postage prepaid, addressed to the party to whom the notice is to be given at the address shown above or to such other addresses as either party may designate to the other in writing. All revocation notices by Guarantor shall be in writing and shall be effective only upon delivery to Lender as provided above in the section titled "DURATION OF GUARANTY." If there is more than one Guarantor, notice to any Guarantor will constitute notice to all Guarantors. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty. If a court of competent jurisdiction finds any provision of this Guaranty to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances, and all provisions of this Guaranty in all other respects shall remain valid and enforceable. If any one or more of Borrower or Guarantor are corporations or partnerships, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, or agents acting or purporting to act on their behalf, and any Indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Waiver.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY." NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED JUNE 14, 2000. THIS GUARANTY IS EXECUTED UNDER SEAL.

GUARANTOR:

X _____
   Robert E. Blair, Jr.


Signed, acknowledged and delivered in the presence of:

X _____
   Witness

X _____
   Witness

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.29 (C) Concentrex 2000  All rights reserved. [MA-E20 BOWDITCH.LN C5.OVL]

**EXHIBIT D**

**To**

**EXHIBIT 1**

# RIEMER & BRAUNSTEIN LLP
## COUNSELORS AT LAW

Three Center Plaza · Boston, Massachusetts 02108-2003

(617) 523-9000 · Fax (617) 880-3456

E-Mail firm@riemerlaw.com

Mark S. Scott
Direct Dial: (617) 880-3452
Writer's Direct Fax: (617) 692-3452
E-Mail: mscott@riemerlaw.com

New York, New York
(212) 302-8880 · Fax (212) 789-3100
Burlington, Massachusetts
(781) 273-2270 · Fax (781) 273-0776

**Certified Article Number**

**7160 3901 9848 7660 4252**

**SENDERS RECORD**

March 10, 2005

**VIA CERTIFIED MAIL/
RETURN RECEIPT REQUESTED
AND FIRST CLASS MAIL**

Mr. Robert E. Blair, Jr.
39 Kittery Ave
Rowley, Massachusetts 02969

Re:   **Loan Arrangement between Sovereign Bank, successor by merger with First Essex
Bank, FSB, and Bowditch Boat Holdings, LLC**

Dear Mr. Blair:

Please be advised that this firm is counsel to Sovereign Bank, successor by merger with First Essex Bank, FSB (the "**Bank**"), in connection with a certain loan arrangement entered into between the Bank and Bowditch Boat Holdings, LLC (the "**Borrower**"), and with you (the "**Guarantor**").

Reference is made to that certain Commercial Guaranty (the "**Guaranty**") dated June 14, 2000 executed and delivered by the Guarantor to the Bank, pursuant to which the Guarantor unconditionally guaranteed the full and punctual payment of all obligations of the Borrower to the Bank.

Please be advised that the Borrower is in default of its obligations to the Bank. Accordingly, the Bank hereby makes **DEMAND** upon the Guarantor for payment in full of all amounts due under the Guaranty, including without limitation, all principal, interest (accrued and hereafter accruing), fees, costs, expenses, and costs of collection (including attorneys' fees).

**PLEASE TAKE NOTICE** that if all amounts due pursuant to the Guaranty are not immediately paid in full, the Bank may commence all appropriate action to collect the outstanding indebtedness without further notice to the Guarantor.

**PLEASE TAKE FURTHER NOTICE** that the Bank hereby expressly reserves the right from and after the date of this notice to accept one or more payments from the Guarantor or on the Guarantor's behalf, and to apply any such payment in reduction of the outstanding obligations due under the Guaranty. The acceptance of any such payment shall not constitute a waiver of any defaults, whether now existing or hereafter arising, nor a waiver of the Bank's demand for immediate payment in full. Further, the Bank

Mr. Robert E. Blair, Jr.
March 10, 2005
Page 2

hereby expressly reserves all of its rights and remedies in this matter and confirms that the terms and conditions of the existing documents, instruments, and agreements remain in full force and effect.

Your prompt attention to this matter is anticipated.

Very truly yours,

Mark S. Scott

MSS
cc:    Mr. Bret Bokelkamp (via telecopier)
       Barry G. Braunstein, Esquire

880702.1

**EXHIBIT E**

**To**

**EXHIBIT 1**

# COMMERCIAL GUARANTY

| | | | |
|---|---|---|---|
| **Borrower:** | Bowditch Boat Holdings, LLC<br>4 Blaney Street<br>Salem, MA 01970 | **Lender:** | First Essex Bank, FSB<br>296 Essex Street<br>Lawrence, MA 01842 |
| **Guarantor:** | Robert J. Salem | | |

**AMOUNT OF GUARANTY.** The amount of this Guaranty is Unlimited.

**CONTINUING UNLIMITED GUARANTY.** For good and valuable consideration, Robert J. Salem ("Guarantor") absolutely and unconditionally guarantees and promises to pay to First Essex Bank, FSB ("Lender") or its order, in legal tender of the United States of America, the Indebtedness (as that term is defined below) of Bowditch Boat Holdings, LLC ("Borrower") to Lender on the terms and conditions set forth in this Guaranty. Under this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing.

**DEFINITIONS.** The following words shall have the following meanings when used in this Guaranty:

Borrower. The word "Borrower" means Bowditch Boat Holdings, LLC.

Guarantor. The word "Guarantor" means Robert J. Salem.

Guaranty. The word "Guaranty" means this Guaranty made by Guarantor for the benefit of Lender dated June 14, 2000.

Indebtedness. The word "Indebtedness" is used in its most comprehensive sense and means and includes any and all of Borrower's liabilities, obligations, debts, and indebtedness to Lender, now existing or hereinafter incurred or created, including, without limitation, all loans, advances, interest, costs, debts, overdraft indebtedness, credit card indebtedness, lease obligations, other obligations, and liabilities of Borrower, or any of them, and any present or future judgments against Borrower, or any of them; and whether any such Indebtedness is voluntarily or involuntarily incurred, due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined; whether Borrower may be liable individually or jointly with others, or primarily or secondarily, or as guarantor or surety; whether recovery on the Indebtedness may be or may become barred or unenforceable against Borrower for any reason whatsoever; and whether the Indebtedness arises from transactions which may be voidable on account of infancy, insanity, ultra vires, or otherwise.

Lender. The word "Lender" means First Essex Bank, FSB, its successors and assigns.

Related Documents. The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**NATURE OF GUARANTY.** Guarantor's liability under this Guaranty shall be open and continuous for so long as this Guaranty remains in force. Guarantor intends to guarantee at all times the performance and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of all Indebtedness. Accordingly, no payments made upon the Indebtedness will discharge or diminish the continuing liability of Guarantor in connection with any remaining portions of the Indebtedness or any of the Indebtedness which subsequently arises or is thereafter incurred or contracted.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all other obligations of Guarantor under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at the address of Lender listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to advances or new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. This Guaranty will continue to bind Guarantor for all Indebtedness incurred by Borrower or committed by Lender prior to receipt of Guarantor's written notice of revocation, including any extensions, renewals, substitutions or modifications of the Indebtedness. All renewals, extensions, substitutions, and modifications of the Indebtedness granted after Guarantor's revocation, are contemplated under this Guaranty and, specifically will not be considered to be new Indebtedness. This Guaranty shall bind the estate of Guarantor as to Indebtedness created both before and after the death or incapacity of Guarantor, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation received by Lender from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of Indebtedness covered by this Guaranty, and it is specifically acknowledged and agreed by Guarantor that reductions in the amount of Indebtedness, even to zero dollars ($0.00), prior to written revocation of this Guaranty by Guarantor shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the guaranteed Indebtedness remains unpaid and even though the Indebtedness guaranteed may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (a) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (b) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (c) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (d) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (e) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (f) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (g) to sell, transfer, assign, or grant participations in all or any part of the Indebtedness; and (h) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (a) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (b) this Guaranty is executed at Borrower's request and not at the request of Lender; (c) Guarantor has full power, right and authority to enter into this Guaranty; (d) the provisions of

**COMMERCIAL GUARAN**
(Continued)

this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (e) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (f) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present the financial condition of Guarantor as of the dates the financial information is provided; (g) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (h) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (i) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (j) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (a) to continue lending money or to extend other credit to Borrower; (b) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (c) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (d) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (e) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (f) to pursue any other remedy within Lender's power; or (g) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

If now or hereafter (a) Borrower shall be or become insolvent, and (b) the Indebtedness shall not at all times until paid be fully secured by collateral pledged by Borrower, Guarantor hereby forever waives and relinquishes in favor of Lender and Borrower, and their respective successors, any claim or right to payment Guarantor may now have or hereafter have or acquire against Borrower, by subrogation or otherwise, so that at no time shall Guarantor be or become a "creditor" of Borrower within the meaning of 11 U.S.C. section 547(b), or any successor provision of the Federal bankruptcy laws.

Guarantor also waives any and all rights or defenses arising by reason of (a) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (b) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (c) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (d) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (e) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced there is outstanding Indebtedness of Borrower to Lender which is not barred by any applicable statute of limitations; or (f) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**LENDER'S RIGHT OF SETOFF.** In addition to all liens upon and rights of setoff against the moneys, securities or other property of Guarantor given to Lender by law, Lender shall have, with respect to Guarantor's obligations to Lender under this Guaranty and to the extent permitted by law, a contractual security interest in and a right of setoff against, and Guarantor hereby assigns, conveys, delivers, pledges, and transfers to Lender all of Guarantor's right, title and interest in and to, all deposits, moneys, securities and other property of Guarantor now or hereafter in the possession of or on deposit with Lender, whether held in a general or special account or deposit, whether held jointly with someone else, or whether held for safekeeping or otherwise, excluding however all IRA, Keogh, and trust accounts. Every such security interest and right of setoff may be exercised without demand upon or notice to Guarantor. No security interest or right of setoff shall be deemed to have been waived by any act or conduct on the part of Lender or by any neglect to exercise such right of setoff or to enforce such security interest or by any delay in so doing. Every right of setoff and security interest shall continue in full force and effect until such right of setoff or security interest is specifically waived or released by an instrument in writing executed by Lender.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness of Borrower to Lender, whether now existing or hereafter created, shall be prior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness of Borrower to Lender. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender hereby is authorized, in the name of Guarantor, from time to time to execute and file financing statements and continuation statements and to execute such other documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

Amendments. This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

06-14-2000

# COMMERCIAL GUARAN~
(Continued)

Page 3

---

**Applicable Law.** This Guaranty has been delivered to Lender and accepted by Lender in the Commonwealth of Massachusetts. If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Essex County, Commonwealth of Massachusetts. Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other. This Guaranty shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (and including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Notices.** All notices required to be given by either party to the other under this Guaranty shall be in writing, may be sent by telefacsimile (unless otherwise required by law), and, except for revocation notices by Guarantor, shall be effective when actually delivered or when deposited with a nationally recognized overnight courier, or when deposited in the United States mail, first class postage prepaid, addressed to the party to whom the notice is to be given at the address shown above or to such other addresses as either party may designate to the other in writing. All revocation notices by Guarantor shall be in writing and shall be effective only upon delivery to Lender as provided above in the section titled "DURATION OF GUARANTY." If there is more than one Guarantor, notice to any Guarantor will constitute notice to all Guarantors. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address.

**Interpretation.** In all cases where there is more than one Borrower or one Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty. If a court of competent jurisdiction finds any provision of this Guaranty to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances, and all provisions of this Guaranty in all other respects shall remain valid and enforceable. If any one or more of Borrower or Guarantor are corporations or partnerships, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, or agents acting or purporting to act on their behalf, and any Indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Waiver.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION ANE DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY." NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED JUNE 14, 2000. THIS GUARANTY IS EXECUTED UNDER SEAL.

GUARANTOR:

X _____
Robert J. Salem

Signed, acknowledged and delivered in the presence of:

X _____
Witness

X _____
Witness

---

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.29 (C) Concentrex 2000 All rights reserved. [MA-E20 BOWDITCH.LN CS.OVL]

**EXHIBIT F**

**To**

**EXHIBIT 1**

# RIEMER & BRAUNSTEIN LLP

═══ C O U N S E L O R S   A T   L A W ═══

Three Center Plaza · Boston, Massachusetts 02108-2003

(617) 523-9000 · Fax (617) 880-3456

E-Mail firm@riemerlaw.com

Mark S. Scott
Direct Dial: (617) 880-3452
Writer's Direct Fax: (617) 692-3452
E-Mail: mscott@riemerlaw.com

New York, New York
(212) 302-8880 · Fax (212) 789-3100
Burlington, Massachusetts
(781) 273-2270 · Fax (781) 273-0776

**Certified Article Number**

**7160 3901 9848 7660 4283**

**SENDERS RECORD**

March 10, 2005

**VIA CERTIFIED MAIL/
RETURN RECEIPT REQUESTED
AND FIRST CLASS MAIL**

Mr. Robert J. Salem
323 Concord Street
Gloucester, Massachusetts 01930

Re:     **Loan Arrangement between Sovereign Bank, successor by merger with First Essex
Bank, FSB, and Bowditch Boat Holdings, LLC**

Dear Mr. Salem:

Please be advised that this firm is counsel to Sovereign Bank, successor by merger with First
Essex Bank, FSB (the "**Bank**"), in connection with a certain loan arrangement entered into between the
Bank and Bowditch Boat Holdings, LLC (the "**Borrower**"), and with you (the "**Guarantor**").

Reference is made to that certain Commercial Guaranty (the "**Guaranty**") dated June 14, 2000
executed and delivered by the Guarantor to the Bank, pursuant to which the Guarantor unconditionally
guaranteed the full and punctual payment of all obligations of the Borrower to the Bank.

Please be advised that the Borrower is in default of its obligations to the Bank. Accordingly, the
Bank hereby makes **DEMAND** upon the Guarantor for payment in full of all amounts due under the
Guaranty, including without limitation, all principal, interest (accrued and hereafter accruing), fees, costs,
expenses, and costs of collection (including attorneys' fees).

**PLEASE TAKE NOTICE** that if all amounts due pursuant to the Guaranty are not immediately
paid in full, the Bank may commence all appropriate action to collect the outstanding indebtedness
without further notice to the Guarantor.

**PLEASE TAKE FURTHER NOTICE** that the Bank hereby expressly reserves the right from
and after the date of this notice to accept one or more payments from the Guarantor or on the Guarantor's
behalf, and to apply any such payment in reduction of the outstanding obligations due under the Guaranty.
The acceptance of any such payment shall not constitute a waiver of any defaults, whether now existing or
hereafter arising, nor a waiver of the Bank's demand for immediate payment in full. Further, the Bank

Mr. Robert J. Salem
March 10, 2005
Page 2

hereby expressly reserves all of its rights and remedies in this matter and confirms that the terms and conditions of the existing documents, instruments, and agreements remain in full force and effect.

Your prompt attention to this matter is anticipated.

Very truly yours,

Mark S. Scott

MSS
cc:    Mr. Bret Bokelkamp (via telecopier)
       Barry G. Braunstein, Esquire

880702.1

**EXHIBIT G**

**To**

**EXHIBIT 1**

# COMMERCIAL GUARANTY

| | |
|---|---|
| **Borrower:** Bowditch Boat Holdings, LLC<br>4 Blaney Street<br>Salem, MA 01970 | **Lender:** First Essex Bank, FSB<br>296 Essex Street<br>Lawrence, MA 01842 |
| **Guarantor:** Henry Lord<br>6134 Barroll Road<br>Baltimore, MD 21209 | |

**AMOUNT OF GUARANTY.** The amount of this Guaranty is Unlimited.

**CONTINUING UNLIMITED GUARANTY.** For good and valuable consideration, Henry Lord ("Guarantor") absolutely and unconditionally guarantees and promises to pay to First Essex Bank, FSB ("Lender") or its order, in legal tender of the United States of America, the Indebtedness (as that term is defined below) of Bowditch Boat Holdings, LLC ("Borrower") to Lender on the terms and conditions set forth in this Guaranty. Under this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing.

**DEFINITIONS.** The following words shall have the following meanings when used in this Guaranty:

Borrower. The word "Borrower" means Bowditch Boat Holdings, LLC.

Guarantor. The word "Guarantor" means Henry Lord.

Guaranty. The word "Guaranty" means this Guaranty made by Guarantor for the benefit of Lender dated June 15, 2000.

Indebtedness. The word "Indebtedness" is used in its most comprehensive sense and means and includes any and all of Borrower's liabilities, obligations, debts, and indebtedness to Lender, now existing or hereinafter incurred or created, including, without limitation, all loans, advances, interest, costs, debts, overdraft indebtedness, credit card indebtedness, lease obligations, other obligations, and liabilities of Borrower, or any of them, and any present or future judgments against Borrower, or any of them; and whether any such indebtedness is voluntarily or involuntarily incurred, due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined; whether Borrower may be liable individually or jointly with others, or primarily or secondarily, or as guarantor or surety; whether recovery on the Indebtedness may be or may become barred or unenforceable against Borrower for any reason whatsoever; and whether the Indebtedness arises from transactions which may be voidable on account of infancy, insanity, ultra vires, or otherwise.

Lender. The word "Lender" means First Essex Bank, FSB, its successors and assigns.

Related Documents. The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**NATURE OF GUARANTY.** Guarantor's liability under this Guaranty shall be open and continuous for so long as this Guaranty remains in force. Guarantor intends to guarantee at all times the performance and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of all Indebtedness. Accordingly, no payments made upon the Indebtedness will discharge or diminish the continuing liability of Guarantor in connection with any remaining portions of the Indebtedness or any of the Indebtedness which subsequently arises or is thereafter incurred or contracted.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all other obligations of Guarantor under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at the address of Lender listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to advances or new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. This Guaranty will continue to bind Guarantor for all Indebtedness incurred by Borrower or committed by Lender prior to receipt of Guarantor's written notice of revocation, including any extensions, renewals, substitutions or modifications of the Indebtedness. All renewals, extensions, substitutions, and modifications of the Indebtedness granted after Guarantor's revocation, are contemplated under this Guaranty and, specifically will not be considered to be new Indebtedness. This Guaranty shall bind the estate of Guarantor as to Indebtedness created both before and after the death or incapacity of Guarantor, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation received by Lender from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of Indebtedness covered by this Guaranty, and it is specifically acknowledged and agreed by Guarantor that reductions in the amount of Indebtedness, even to zero dollars ($0.00), prior to written revocation of this Guaranty by Guarantor shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the guaranteed Indebtedness remains unpaid and even though the Indebtedness guaranteed may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (a) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (b) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (c) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (d) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (e) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (f) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (g) to sell, transfer, assign, or grant participations in all or any part of the Indebtedness; and (h) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (a) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (b) this Guaranty is executed at Borrower's request and not at the request of Lender; (c) Guarantor has full power, right and authority to enter into this Guaranty; (d) the provisions of

06-15-2000                          **COMMERCIAL GUARANTY**                          Page 2
                                          (Continued)

this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (e) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (f) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present the financial condition of Guarantor as of the dates the financial information is provided; (g) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely effect Guarantor's financial condition; (h) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (i) Guarantor has made no representation to Guarantor as to the creditworthiness of Borrower; and (j) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way effect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (a) to continue lending money or to extend other credit to Borrower; (b) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (c) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (d) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (e) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (f) to pursue any other remedy within Lender's power; or (g) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

If now or hereafter (a) Borrower shall be or become insolvent, and (b) the Indebtedness shall not at all times until paid be fully secured by collateral pledged by Borrower, Guarantor hereby forever waives and relinquishes in favor of Lender and Borrower, and their respective successors, any claim or right to payment Guarantor may now have or hereafter have or acquire against Borrower, by subrogation or otherwise, so that at no time shall Guarantor be or become a "creditor" of Borrower within the meaning of 11 U.S.C. section 547(b), or any successor provision of the Federal bankruptcy laws.

Guarantor also waives any and all rights or defenses arising by reason of (a) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (b) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (c) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (d) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (e) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced there is outstanding Indebtedness of Borrower to Lender which is not barred by any applicable statute of limitations; or (f) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**LENDER'S RIGHT OF SETOFF.** In addition to all liens upon and rights of setoff against the moneys, securities or other property of Guarantor given to Lender by law, Lender shall have, with respect to Guarantor's obligations to Lender under this Guaranty and to the extent permitted by law, a contractual security interest in and a right of setoff against, and Guarantor hereby assigns, conveys, delivers, pledges, and transfers to Lender all of Guarantor's right, title and interest in and to, all deposits, moneys, securities and other property of Guarantor now or hereafter in the possession of or on deposit with Lender, whether held in a general or special account or deposit, whether held jointly with someone else, or whether held for safekeeping or otherwise, excluding however all IRA, Keogh, and trust accounts. Every such security interest and right of setoff may be exercised without demand upon or notice to Guarantor. No security interest or right of setoff shall be deemed to have been waived by any act or conduct on the part of Lender or by any neglect to exercise such right of setoff or to enforce such security interest or by any delay in so doing. Every right of setoff and security interest shall continue in full force and effect until such right of setoff or security interest is specifically waived or released by an instrument in writing executed by Lender.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness of Borrower to Lender, whether now existing or hereafter created, shall be prior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness of Borrower to Lender. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender hereby is authorized, in the name of Guarantor, from time to time to execute and file financing statements and continuation statements and to execute such other documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

Amendments. This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

06/14/2000  12:57  9787406771                GOLDENEYE                        PAGE  04
06/14/00  WED 11:33 FAX 9789761055    First Essex Comm Ln Div              Ø007

06-15-2000                    **COMMERCIAL GUARANTY**                         Page 3
                                  (Continued)

**Applicable Law.** This Guaranty has been delivered to Lender and accepted by Lender in the Commonwealth of Massachusetts. If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Essex County, Commonwealth of Massachusetts. Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other. This Guaranty shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (and including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Notices.** All notices required to be given by either party to the other under this Guaranty shall be in writing, may be sent by telefacsimile (unless otherwise required by law), and, except for revocation notices by Guarantor, shall be effective when actually delivered or when deposited with a nationally recognized overnight courier, or when deposited in the United States mail, first class postage prepaid, addressed to the party to whom the notice is to be given at the address shown above or to such other addresses as either party may designate to the other in writing. All revocation notices by Guarantor shall be in writing and shall be effective only upon delivery to Lender as provided above in the section titled "DURATION OF GUARANTY." If there is more than one Guarantor, notice to any Guarantor will constitute notice to all Guarantors. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty. If a court of competent jurisdiction finds any provision of this Guaranty to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances, and all provisions of this Guaranty in all other respects shall remain valid and enforceable. If any one or more of Borrower or Guarantor are corporations or partnerships, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, or agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Waiver.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS.  IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY."  NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE.  THIS GUARANTY IS DATED JUNE 15, 2000.  THIS GUARANTY IS EXECUTED UNDER SEAL.

GUARANTOR:

X _____  6.14.00
Henry Lord

Signed, acknowledged and delivered in the presence of:

X _____
    Witness

X _____
    Witness

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.29 (C) Concentrex 2000  All rights reserved.  [MA-E20 BOWDITCH.LN C9.OVL]

**EXHIBIT H**

**To**

**EXHIBIT 1**

# RIEMER & BRAUNSTEIN LLP
## COUNSELORS AT LAW

Three Center Plaza · Boston, Massachusetts 02108-2003

(617) 523-9000 · Fax (617) 880-3456

E-Mail firm@riemerlaw.com

Mark S. Scott
Direct Dial: (617) 880-3452
Writer's Direct Fax: (617) 692-3452
E-Mail: mscott@riemerlaw.com

New York, New York
(212) 302-8880 · Fax (212) 789-3100
Burlington, Massachusetts
(781) 273-2270 · Fax (781) 273-0776

**Certified Article Number**

7160 3901 9848 7660 4290

**SENDERS RECORD**

March 10, 2005

**VIA CERTIFIED MAIL/
RETURN RECEIPT REQUESTED
AND FIRST CLASS MAIL**

Mr. Henry J. Lord
6134 Barroll Rd
Baltimore, Maryland 21207

**Re:** **Loan Arrangement between Sovereign Bank, successor by merger with First Essex Bank, FSB, and Bowditch Boat Holdings, LLC**

Dear Mr. Lord:

Please be advised that this firm is counsel to Sovereign Bank, successor by merger with First Essex Bank, FSB (the "**Bank**"), in connection with a certain loan arrangement entered into between the Bank and Bowditch Boat Holdings, LLC (the "**Borrower**"), and with you (the "**Guarantor**").

Reference is made to that certain Commercial Guaranty (the "**Guaranty**") dated June 14, 2000 executed and delivered by the Guarantor to the Bank, pursuant to which the Guarantor unconditionally guaranteed the full and punctual payment of all obligations of the Borrower to the Bank.

Please be advised that the Borrower is in default of its obligations to the Bank. Accordingly, the Bank hereby makes **DEMAND** upon the Guarantor for payment in full of all amounts due under the Guaranty, including without limitation, all principal, interest (accrued and hereafter accruing), fees, costs, expenses, and costs of collection (including attorneys' fees).

**PLEASE TAKE NOTICE** that if all amounts due pursuant to the Guaranty are not immediately paid in full, the Bank may commence all appropriate action to collect the outstanding indebtedness without further notice to the Guarantor.

**PLEASE TAKE FURTHER NOTICE** that the Bank hereby expressly reserves the right from and after the date of this notice to accept one or more payments from the Guarantor or on the Guarantor's behalf, and to apply any such payment in reduction of the outstanding obligations due under the Guaranty. The acceptance of any such payment shall not constitute a waiver of any defaults, whether now existing or hereafter arising, nor a waiver of the Bank's demand for immediate payment in full. Further, the Bank

Mr. Henry J. Lord
March 10, 2005
Page 2

hereby expressly reserves all of its rights and remedies in this matter and confirms that the terms and conditions of the existing documents, instruments, and agreements remain in full force and effect.

Your prompt attention to this matter is anticipated.

Very truly yours,

Mark S. Scott

MSS

cc:    Mr. Bret Bokelkamp (via telecopier)
       Barry G. Braunstein, Esquire

880702.1

881098.1

*R I E M E R  &  B R A U N S T E I N* LLP
COUNSELORS AT LAW

**EXHIBIT I**

**To**

**EXHIBIT 1**

# COMMERCIAL GUARANTY

| | | | |
|---|---|---|---|
| Borrower: | Bowditch Boat Holdings, LLC<br>4 Blaney Street<br>Salem, MA 01970 | Lender: | First Essex Bank, FSB<br>296 Essex Street<br>Lawrence, MA 01842 |
| Guarantor: | Goldeneye Corporation<br>4 Blaney Street<br>Salem, MA 01970 | | |

**AMOUNT OF GUARANTY.** The amount of this Guaranty is Unlimited.

**CONTINUING UNLIMITED GUARANTY.** For good and valuable consideration, Goldeneye Corporation ("Guarantor") absolutely and unconditionally guarantees and promises to pay to First Essex Bank, FSB ("Lender") or its order, in legal tender of the United States of America, the Indebtedness (as that term is defined below) of Bowditch Boat Holdings, LLC ("Borrower") to Lender on the terms and conditions set forth in this Guaranty. Under this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing.

**DEFINITIONS.** The following words shall have the following meanings when used in this Guaranty:

Borrower. The word "Borrower" means Bowditch Boat Holdings, LLC.

Guarantor. The word "Guarantor" means Goldeneye Corporation.

Guaranty. The word "Guaranty" means this Guaranty made by Guarantor for the benefit of Lender dated June 14, 2000.

Indebtedness. The word "Indebtedness" is used in its most comprehensive sense and means and includes any and all of Borrower's liabilities, obligations, debts, and indebtedness to Lender, now existing or hereinafter incurred or created, including, without limitation, all loans, advances, interest, costs, debts, overdraft indebtedness, credit card indebtedness, lease obligations, other obligations, and liabilities of Borrower, or any of them, and any present or future judgments against Borrower, or any of them; and whether any such Indebtedness is voluntarily or involuntarily incurred, due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined; whether Borrower may be liable individually or jointly with others, or primarily or secondarily, or as guarantor or surety; whether recovery on the Indebtedness may be or may become barred or unenforceable against Borrower for any reason whatsoever; and whether the Indebtedness arises from transactions which may be voidable on account of infancy, insanity, ultra vires, or otherwise.

Lender. The word "Lender" means First Essex Bank, FSB, its successors and assigns.

Related Documents. The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**MAXIMUM LIABILITY.** The maximum liability of Guarantor under this Guaranty shall be unlimited.

**NATURE OF GUARANTY.** Guarantor's liability under this Guaranty shall be open and continuous for so long as this Guaranty remains in force. Guarantor intends to guarantee at all times the performance and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of all Indebtedness. Accordingly, no payments made upon the Indebtedness will discharge or diminish the continuing liability of Guarantor in connection with any remaining portions of the Indebtedness or any of the Indebtedness which subsequently arises or is thereafter incurred or contracted.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all other obligations of Guarantor under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at the address of Lender listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to advances or new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. Notice of revocation shall be effective only as to the particular Guarantor providing the notice, and shall not affect the liability of other guarantors. This Guaranty will continue to bind Guarantor for all Indebtedness incurred by Borrower or committed by Lender prior to receipt of Guarantor's written notice of revocation, including any extensions, renewals, substitutions or modifications of the Indebtedness. All renewals, extensions, substitutions, and modifications of the Indebtedness granted after Guarantor's revocation, are contemplated under this Guaranty and, specifically will not be considered to be new Indebtedness. This Guaranty shall bind the estate of Guarantor as to Indebtedness created both before and after the death or incapacity of Guarantor, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation received by Lender from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of Indebtedness covered by this Guaranty, and it is specifically acknowledged and agreed by Guarantor that reductions in the amount of Indebtedness, even to zero dollars ($0.00), prior to written revocation of this Guaranty by Guarantor shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the guaranteed Indebtedness remains unpaid and even though the Indebtedness guaranteed may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (a) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (b) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (c) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (d) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (e) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (f) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (g) to sell, transfer, assign, or grant participations in all or any part of the Indebtedness; and (h) to assign or

transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (a) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (b) this Guaranty is executed at Borrower's request and not at the request of Lender; (c) Guarantor has full power, right and authority to enter into this Guaranty; (d) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (e) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (f) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present the financial condition of Guarantor as of the dates the financial information is provided; (g) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (h) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (i) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (j) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (a) to continue lending money or to extend other credit to Borrower; (b) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (c) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (d) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (e) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (f) to pursue any other remedy within Lender's power; or (g) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

If now or hereafter (a) Borrower shall be or become insolvent, and (b) the Indebtedness shall not at all times until paid be fully secured by collateral pledged by Borrower, Guarantor hereby forever waives and relinquishes in favor of Lender and Borrower, and their respective successors, any claim or right to payment Guarantor may now have or hereafter have or acquire against Borrower, by subrogation or otherwise, so that at no time shall Guarantor be or become a "creditor" of Borrower within the meaning of 11 U.S.C. section 547(b), or any successor provision of the Federal bankruptcy laws.

Guarantor also waives any and all rights or defenses arising by reason of (a) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (b) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (c) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (d) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (e) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced there is outstanding Indebtedness of Borrower to Lender which is not barred by any applicable statute of limitations; or (f) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**LENDER'S RIGHT OF SETOFF.** In addition to all liens upon and rights of setoff against the moneys, securities or other property of Guarantor given to Lender by law, Lender shall have, with respect to Guarantor's obligations to Lender under this Guaranty and to the extent permitted by law, a contractual security interest in and a right of setoff against, and Guarantor hereby assigns, conveys, delivers, pledges, and transfers to Lender all of Guarantor's right, title and interest in and to, all deposits, moneys, securities and other property of Guarantor now or hereafter in the possession of or on deposit with Lender, whether held in a general or special account or deposit, whether held jointly with someone else, or whether held for safekeeping or otherwise, excluding however all IRA, Keogh, and trust accounts. Every such security interest and right of setoff may be exercised without demand upon or notice to Guarantor. No security interest or right of setoff shall be deemed to have been waived by any act or conduct on the part of Lender or by any neglect to exercise such right of setoff or to enforce such security interest or by any delay in so doing. Every right of setoff and security interest shall continue in full force and effect until such right of setoff or security interest is specifically waived or released by an instrument in writing executed by Lender.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness of Borrower to Lender, whether now existing or hereafter created, shall be prior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness of Borrower to Lender. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender hereby is authorized, in the name of Guarantor, from time to time to execute and file financing statements and continuation statements and to execute such other documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

06-14-2000                          **COMMERCIAL GUARAN**                          Page 3
                                         (Continued)

MISCELLANEOUS PROVISIONS. The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Applicable Law.** This Guaranty has been delivered to Lender and accepted by Lender in the Commonwealth of Massachusetts. If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Essex County, Commonwealth of Massachusetts. Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other. This Guaranty shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (and including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Notices.** All notices required to be given by either party to the other under this Guaranty shall be in writing, may be sent by telefacsimile (unless otherwise required by law), and, except for revocation notices by Guarantor, shall be effective when actually delivered or when deposited with a nationally recognized overnight courier, or when deposited in the United States mail, first class postage prepaid, addressed to the party to whom the notice is to be given at the address shown above or to such other addresses as either party may designate to the other in writing. All revocation notices by Guarantor shall be in writing and shall be effective only upon delivery to Lender as provided above in the section titled "DURATION OF GUARANTY." If there is more than one Guarantor, notice to any Guarantor will constitute notice to all Guarantors. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty. If a court of competent jurisdiction finds any provision of this Guaranty to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances, and all provisions of this Guaranty in all other respects shall remain valid and enforceable. If any one or more of Borrower or Guarantor are corporations or partnerships, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, or agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Waiver.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withhold in the sole discretion of Lender.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY." NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED JUNE 14, 2000. THIS GUARANTY IS EXECUTED UNDER SEAL.

GUARANTOR:

Goldeneye Corporation

By: _____ *pres. treas.*

Signed, acknowledged and delivered in the presence of:

X _____
   Witness

X _____
   Witness

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.29 (C) Concentrex 2000  All rights reserved. [MA-E20A BOWDITCH.LN C5.OVL]

**EXHIBIT J**

**To**

**EXHIBIT 1**

# RIEMER & BRAUNSTEIN LLP
### ══ COUNSELORS AT LAW ══
Three Center Plaza · Boston, Massachusetts 02108-2003

(617) 523-9000 · Fax (617) 880-3456

E-Mail firm@riemerlaw.com

Mark S. Scott
Direct Dial: (617) 880-3452
Writer's Direct Fax: (617) 692-3452
E-Mail: mscott@riemerlaw.com

New York, New York
(212) 302-8880 · Fax (212) 789-3100
Burlington, Massachusetts
(781) 273-2270 · Fax (781) 273-0776

**Certified Article Number**

**7160 3901 9848 7661 6507**

**SENDERS RECORD**

March 10, 2005

VIA CERTIFIED MAIL/
RETURN RECEIPT REQUESTED
AND FIRST CLASS MAIL

Goldeneye Corporation
4 Blaney Street
Salem, Massachusetts 01970
Attn: Mr. Robert J. Salem, President

**Re:   Loan Arrangement between Sovereign Bank, successor by merger with First Essex
Bank, FSB, and Bowditch Boat Holdings, LLC**

Dear Mr. Salem:

Please be advised that this firm is counsel to Sovereign Bank, successor by merger with First Essex Bank, FSB (the "**Bank**"), in connection with a certain loan arrangement entered into between the Bank and Bowditch Boat Holdings, LLC (the "**Borrower**"), and with Goldeneye Corporation (the "**Guarantor**").

Reference is made to that certain Commercial Guaranty (the "**Guaranty**") dated June 14, 2000 executed and delivered by the Guarantor to the Bank, pursuant to which the Guarantor unconditionally guaranteed the full and punctual payment of all obligations of the Borrower to the Bank.

Please be advised that the Borrower is in default of its obligations to the Bank. Accordingly, the Bank hereby makes **DEMAND** upon the Guarantor for payment in full of all amounts due under the Guaranty, including without limitation, all principal, interest (accrued and hereafter accruing), fees, costs, expenses, and costs of collection (including attorneys' fees).

**PLEASE TAKE NOTICE** that if all amounts due pursuant to the Guaranty are not immediately paid in full, the Bank may commence all appropriate action to collect the outstanding indebtedness without further notice to the Guarantor.

**PLEASE TAKE FURTHER NOTICE** that the Bank hereby expressly reserves the right from and after the date of this notice to accept one or more payments from the Guarantor or on the Guarantor's behalf, and to apply any such payment in reduction of the outstanding obligations due under the Guaranty.

Goldeneye Corporation
March 10, 2005
Page 2

The acceptance of any such payment shall not constitute a waiver of any defaults, whether now existing or hereafter arising, nor a waiver of the Bank's demand for immediate payment in full.  Further, the Bank hereby expressly reserves all of its rights and remedies in this matter and confirms that the terms and conditions of the existing documents, instruments, and agreements remain in full force and effect.

Your prompt attention to this matter is anticipated.

Very truly yours,

Mark S. Scott

MSS
cc:    Mr. Bret Bokelkamp (via telecopier)
       Barry G. Braunstein, Esquire

880702.1

RIEMER & BRAUNSTEIN LLP
COUNSELORS AT LAW

**EXHIBIT K**

**To**

**EXHIBIT 1**

# COMMERCIAL GUARAN

| | | | |
|---|---|---|---|
| **Borrower:** | Bowditch Boat Holdings, LLC<br>4 Blaney Street<br>Salem, MA 01970 | **Lender:** | First Essex Bank, FSB<br>296 Essex Street<br>Lawrence, MA 01842 |
| **Guarantor:** | Salem Whale Watch & Cruise Company, LLC DBA: Salem Cruise Company | | |

**AMOUNT OF GUARANTY.** The amount of this Guaranty is Unlimited.

**CONTINUING UNLIMITED GUARANTY.** For good and valuable consideration, Salem Whale Watch & Cruise Company, LLC DBA: Salem Cruise Company ("Guarantor") absolutely and unconditionally guarantees and promises to pay to First Essex Bank, FSB ("Lender") or its order, in legal tender of the United States of America, the Indebtedness (as that term is defined below) of Bowditch Boat Holdings, LLC ("Borrower") to Lender on the terms and conditions set forth in this Guaranty. Under this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing.

**DEFINITIONS.** The following words shall have the following meanings when used in this Guaranty:

Borrower. The word "Borrower" means Bowditch Boat Holdings, LLC.

Guarantor. The word "Guarantor" means Salem Whale Watch & Cruise Company, LLC DBA: Salem Cruise Company.

Guaranty. The word "Guaranty" means this Guaranty made by Guarantor for the benefit of Lender dated June 14, 2000.

Indebtedness. The word "Indebtedness" is used in its most comprehensive sense and means and includes any and all of Borrower's liabilities, obligations, debts, and indebtedness to Lender, now existing or hereinafter incurred or created, including, without limitation, all loans, advances, interest, costs, debts, overdraft indebtedness, credit card indebtedness, lease obligations, other obligations, and liabilities of Borrower, or any of them, and any present or future judgments against Borrower, or any of them; and whether any such Indebtedness is voluntarily or involuntarily incurred, due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined; whether Borrower may be liable individually or jointly with others, or primarily or secondarily, or as guarantor or surety; whether recovery on the Indebtedness may be or may become barred or unenforceable against Borrower for any reason whatsoever; and whether the Indebtedness arises from transactions which may be voidable on account of infancy, insanity, ultra vires, or otherwise.

Lender. The word "Lender" means First Essex Bank, FSB, its successors and assigns.

Related Documents. The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**MAXIMUM LIABILITY.** The maximum liability of Guarantor under this Guaranty shall be unlimited.

**NATURE OF GUARANTY.** Guarantor's liability under this Guaranty shall be open and continuous for so long as this Guaranty remains in force. Guarantor intends to guarantee at all times the performance and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of all Indebtedness. Accordingly, no payments made upon the Indebtedness will discharge or diminish the continuing liability of Guarantor in connection with any remaining portions of the Indebtedness or any of the Indebtedness which subsequently arises or is thereafter incurred or contracted.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all other obligations of Guarantor under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at the address of Lender listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to advances or new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. Notice of revocation shall be effective only as to the particular Guarantor providing the notice, and shall not affect the liability of other guarantors. This Guaranty will continue to bind Guarantor for all Indebtedness incurred by Borrower or committed by Lender prior to receipt of Guarantor's written notice of revocation, including any extensions, renewals, substitutions or modifications of the Indebtedness. All renewals, extensions, substitutions, and modifications of the Indebtedness granted after Guarantor's revocation, are contemplated under this Guaranty and, specifically will not be considered to be new Indebtedness. This Guaranty shall bind the estate of Guarantor as to Indebtedness created both before and after the death or incapacity of Guarantor, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation received by Lender from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of Indebtedness covered by this Guaranty, and it is specifically acknowledged and agreed by Guarantor that reductions in the amount of Indebtedness, even to zero dollars ($0.00), prior to written revocation of this Guaranty by Guarantor shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the guaranteed Indebtedness remains unpaid and even though the Indebtedness guaranteed may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (a) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (b) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (c) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (d) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (e) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (f) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (g) to sell, transfer, assign, or grant participations in all or any part of the Indebtedness; and (h) to assign or

transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (a) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (b) this Guaranty is executed at Borrower's request and not at the request of Lender; (c) Guarantor has full power, right and authority to enter into this Guaranty; (d) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (e) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (f) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present the financial condition of Guarantor as of the dates the financial information is provided; (g) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (h) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (i) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (j) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (a) to continue lending money or to extend other credit to Borrower; (b) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (c) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (d) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (e) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (f) to pursue any other remedy within Lender's power; or (g) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

If now or hereafter (a) Borrower shall be or become insolvent, and (b) the Indebtedness shall not at all times until paid be fully secured by collateral pledged by Borrower, Guarantor hereby forever waives and relinquishes in favor of Lender and Borrower, and their respective successors, any claim or right to payment Guarantor may now have or hereafter have or acquire against Borrower, by subrogation or otherwise, so that at no time shall Guarantor be or become a "creditor" of Borrower within the meaning of 11 U.S.C. section 547(b), or any successor provision of the Federal bankruptcy laws.

Guarantor also waives any and all rights or defenses arising by reason of (a) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (b) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (c) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (d) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (e) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced there is outstanding Indebtedness of Borrower to Lender which is not barred by any applicable statute of limitations; or (f) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**LENDER'S RIGHT OF SETOFF.** In addition to all liens upon and rights of setoff against the moneys, securities or other property of Guarantor given to Lender by law, Lender shall have, with respect to Guarantor's obligations to Lender under this Guaranty and to the extent permitted by law, a contractual security interest in and a right of setoff against, and Guarantor hereby assigns, conveys, delivers, pledges, and transfers to Lender all of Guarantor's right, title and interest in and to, all deposits, moneys, securities and other property of Guarantor now or hereafter in the possession of or on deposit with Lender, whether held in a general or special account or deposit, whether held jointly with someone else, or whether held for safekeeping or otherwise, excluding however all IRA, Keogh, and trust accounts. Every such security interest and right of setoff may be exercised without demand upon or notice to Guarantor. No security interest or right of setoff shall be deemed to have been waived by any act or conduct on the part of Lender or by any neglect to exercise such right of setoff or to enforce such security interest or by any delay in so doing. Every right of setoff and security interest shall continue in full force and effect until such right of setoff or security interest is specifically waived or released by an instrument in writing executed by Lender.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness of Borrower to Lender, whether now existing or hereafter created, shall be prior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness of Borrower to Lender. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender hereby is authorized, in the name of Guarantor, from time to time to execute and file financing statements and continuation statements and to execute such other documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

06-14-2000

# COMMERCIAL GUARAN

Page 3

(Continued)

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Applicable Law.** This Guaranty has been delivered to Lender and accepted by Lender in the Commonwealth of Massachusetts. If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Essex County, Commonwealth of Massachusetts. Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other. This Guaranty shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (and including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Notices.** All notices required to be given by either party to the other under this Guaranty shall be in writing, may be sent by telefacsimile (unless otherwise required by law), and, except for revocation notices by Guarantor, shall be effective when actually delivered or when deposited with a nationally recognized overnight courier, or when deposited in the United States mail, first class postage prepaid, addressed to the party to whom the notice is to be given at the address shown above or to such other addresses as either party may designate to the other in writing. All revocation notices by Guarantor shall be in writing and shall be effective only upon delivery to Lender as provided above in the section titled "DURATION OF GUARANTY." If there is more than one Guarantor, notice to any Guarantor will constitute notice to all Guarantors. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty. If a court of competent jurisdiction finds any provision of this Guaranty to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances, and all provisions of this Guaranty in all other respects shall remain valid and enforceable. If any one or more of Borrower or Guarantor are corporations or partnerships, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, or agents acting or purporting to act on their behalf, and any Indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Waiver.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY." NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED JUNE 14, 2000. THIS GUARANTY IS EXECUTED UNDER SEAL.

GUARANTOR:

Salem Whale Watch & Cruise Company, LLC DBA: Salem Cruise Company

By: _____

Signed, acknowledged and delivered in the presence of:

X _____
   Witness

X _____
   Witness

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.29 (C) Concentrex 2000 All rights reserved. [MA-E20A BOWDITCH.LN C5.OVL]

**EXHIBIT L**

**To**

**EXHIBIT 1**

# RIEMER & BRAUNSTEIN LLP
## COUNSELORS AT LAW

Three Center Plaza · Boston, Massachusetts 02108-2003

(617) 523-9000 · Fax (617) 880-3456

E-Mail firm@riemerlaw.com

Mark S. Scott
Direct Dial: (617) 880-3452
Writer's Direct Fax: (617) 692-3452
E-Mail: mscott@riemerlaw.com

New York, New York
(212) 302-8880 · Fax (212) 789-3100
Burlington, Massachusetts
(781) 273-2270 · Fax (781) 273-0776

Certified Article Number

7160 3901 9848 7661 6484

SENDERS RECORD

March 10, 2005

**VIA CERTIFIED MAIL/**
**RETURN RECEIPT REQUESTED**
**AND FIRST CLASS MAIL**

Salem Whale Watch & Cruise Company, LLC
5 Blaney Street
Salem, Massachusetts 01970
Attn: Mr. Robert E. Blair, Jr., Manager

> **Re:**  **Loan Arrangement between Sovereign Bank, successor by merger with First Essex Bank, FSB, and Bowditch Boat Holdings, LLC**

Dear Mr. Blair:

Please be advised that this firm is counsel to Sovereign Bank, successor by merger with First Essex Bank, FSB (the "**Bank**"), in connection with a certain loan arrangement entered into between the Bank and Bowditch Boat Holdings, LLC (the "**Borrower**"), and with Salem Whale Watch & Cruise Company, LLC (the "**Guarantor**").

Reference is made to that certain Commercial Guaranty (the "**Guaranty**") dated June 14, 2000 executed and delivered by the Guarantor to the Bank, pursuant to which the Guarantor unconditionally guaranteed the full and punctual payment of all obligations of the Borrower to the Bank.

Please be advised that the Borrower is in default of its obligations to the Bank. Accordingly, the Bank hereby makes **DEMAND** upon the Guarantor for payment in full of all amounts due under the Guaranty, including without limitation, all principal, interest (accrued and hereafter accruing), fees, costs, expenses, and costs of collection (including attorneys' fees).

**PLEASE TAKE NOTICE** that if all amounts due pursuant to the Guaranty are not immediately paid in full, the Bank may commence all appropriate action to collect the outstanding indebtedness without further notice to the Guarantor.

**PLEASE TAKE FURTHER NOTICE** that the Bank hereby expressly reserves the right from and after the date of this notice to accept one or more payments from the Guarantor or on the Guarantor's behalf, and to apply any such payment in reduction of the outstanding obligations due under the Guaranty.

Salem Whale Watch & Cruise Company, LLC
March 10, 2005
Page 2

The acceptance of any such payment shall not constitute a waiver of any defaults, whether now existing or hereafter arising, nor a waiver of the Bank's demand for immediate payment in full. Further, the Bank hereby expressly reserves all of its rights and remedies in this matter and confirms that the terms and conditions of the existing documents, instruments, and agreements remain in full force and effect.

Your prompt attention to this matter is anticipated.

Very truly yours,

Mark S. Scott

MSS
cc:     Mr. Bret Bokelkamp (via telecopier)
        Barry G. Braunstein, Esquire

880702.1

**EXHIBIT M**

**To**

**EXHIBIT 1**

# COMMERCIAL GUARANTY

---

| | | | |
|---|---|---|---|
| **Borrower:** | Bowditch Boat Holdings, LLC<br>4 Bianey Street<br>Salem, MA 01970 | **Lender:** | First Essex Bank, FSB<br>296 Essex Street<br>Lawrence, MA 01842 |
| **Guarantor:** | Lake Champlain Transportation Company<br>King Street Dock<br>Burlington, VT 05401 | | |

---

**AMOUNT OF GUARANTY.** The amount of this Guaranty is Unlimited.

**CONTINUING UNLIMITED GUARANTY.** For good and valuable consideration, Lake Champlain Transportation Company ("Guarantor") absolutely and unconditionally guarantees and promises to pay to First Essex Bank, FSB ("Lender") or its order, in legal tender of the United States of America, the Indebtedness (as that term is defined below) of Bowditch Boat Holdings, LLC ("Borrower") to Lender on the terms and conditions set forth in this Guaranty. Under this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing.

**DEFINITIONS.** The following words shall have the following meanings when used in this Guaranty:

*Borrower.* The word "Borrower" means Bowditch Boat Holdings, LLC.

*Guarantor.* The word "Guarantor" means Lake Champlain Transportation Company.

*Guaranty.* The word "Guaranty" means this Guaranty made by Guarantor for the benefit of Lender dated June 15, 2000.

*Indebtedness.* The word "Indebtedness" is used in its most comprehensive sense and means and includes any and all of Borrower's liabilities, obligations, debts, and indebtedness to Lender, now existing or hereinafter incurred or created, including, without limitation, all loans, advances, interest, costs, debts, overdraft indebtedness, credit card indebtedness, lease obligations, other obligations, and liabilities of Borrower, or any of them, and any present or future judgments against Borrower, or any of them, and whether any such indebtedness is voluntarily or involuntarily incurred, due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined; whether Borrower may be liable individually or jointly with others, or primarily or secondarily, or as guarantor or surety; whether recovery on the Indebtedness may be or may hereafter become barred or unenforceable against Borrower for any reason whatsoever, and whether the Indebtedness arises from transactions which may be voidable on account of infancy, insanity, ultra vires, or otherwise.

*Lender.* The word "Lender" means First Essex Bank, FSB, its successors and assigns.

*Related Documents.* The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**MAXIMUM LIABILITY.** The maximum liability of Guarantor under this Guaranty shall be unlimited.

**NATURE OF GUARANTY.** Guarantor's liability under this Guaranty shall be open and continuous for so long as this Guaranty remains in force. Guarantor intends to guarantee at all times the performance and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of all Indebtedness. Accordingly, no payments made upon the Indebtedness will discharge or diminish the continuing liability of Guarantor in connection with any remaining portions of the Indebtedness or any of the Indebtedness which subsequently arises or is thereafter incurred or contracted.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully paid and finally paid and satisfied and all other obligations of Guarantor under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at the address of Lender listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to advances or new indebtedness created after actual receipt by Lender of Guarantor's written notice of revocation. For this purpose and without limitation, the term "new indebtedness" does not include indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. This Guaranty will continue to bind Guarantor for all indebtedness incurred by Borrower or committed by Lender prior to receipt of Guarantor's written notice of revocation, including any extensions, renewals, substitutions or modifications of the Indebtedness. All renewals, extensions, substitutions, and modifications of the Indebtedness granted after Guarantor's revocation, are contemplated under this Guaranty and, specifically will not be considered to be new indebtedness. This Guaranty shall bind the estate of Guarantor as to indebtedness created both before and after the death or incapacity of Guarantor, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation received by Lender from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of indebtedness covered by this Guaranty, and it is specifically acknowledged and agreed by Guarantor that reductions in the amount of indebtedness, even to zero dollars ($0.00), prior to written revocation of this Guaranty by Guarantor shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the guaranteed Indebtedness remains unpaid and even though the indebtedness guaranteed may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (a) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (b) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the indebtedness or any part of the indebtedness, including increases and decreases of the rate of interest on the indebtedness; extensions may be repeated and may be for longer than the original loan term; (c) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (d) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (e) to determine how, when and what application of payments and credits shall be made on the indebtedness; (f) to apply such security and direct the order or manner of sale thereof, including without limitation, any judicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (g) to sell, transfer, assign, or grant participations in all or any part of the Indebtedness; and (h) to assign or transfer this Guaranty in whole or in part.

06-15-2000                    **COMMERCIAL GUARANTY**                    Page 2
                                    (Continued)

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that: (a) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (b) this Guaranty is executed at Borrower's request and not at the request of Lender; (c) Guarantor has full power, right and authority to enter into this Guaranty; (d) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (e) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (f) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present the financial condition of Guarantor as of the dates the financial information is provided; (g) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (h) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (i) Lender has made no representation to Guarantor as to the creditworthiness of Borrower, and (j) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender: (a) to continue lending money or to extend other credit to Borrower; (b) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the indebtedness or in connection with the creation of new or additional loans or obligations; (c) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (d) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (e) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (f) to pursue any other remedy within Lender's power; or (g) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

If now or hereafter (a) Borrower shall be or become insolvent, and (b) the Indebtedness shall not at all times until paid be fully secured by collateral pledged by Borrower, Guarantor hereby forever waives and relinquishes in favor of Lender and Borrower, and their respective successors, any claim or right to payment Guarantor may now have or hereafter have or acquire against Borrower, by subrogation or otherwise, so that at no time shall Guarantor be or become a "creditor" of Borrower within the meaning of 11 U.S.C. section 547(b), or any successor provision of the Federal bankruptcy laws.

Guarantor also waives any and all rights or defenses arising by reason of (a) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (b) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the indebtedness; (c) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the indebtedness; (d) any right to claim discharge of the indebtedness on the basis of unjustified impairment of any collateral for the indebtedness; (e) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced there is outstanding indebtedness of Borrower to Lender which is not barred by any applicable statute of limitations; or (f) any defenses given to guarantors at law or in equity other than actual payment and performance of the indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the indebtedness shall be considered unpaid for the purpose of enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**LENDER'S RIGHT OF SETOFF.** In addition to all liens upon and rights of setoff against the moneys, securities or other property of Guarantor given to Lender by law, Lender shall have, with respect to Guarantor's obligations to Lender under this Guaranty and to the extent permitted by law, a contractual security interest in and a right of setoff against, and Guarantor hereby assigns, conveys, delivers, pledges, and transfers to Lender all of Guarantor's right, title and interest in and to, all deposits, moneys, securities and other property of Guarantor now or hereafter in the possession of or on deposit with Lender, whether held in a general or special account or deposit, whether held jointly with someone else, or whether held for safekeeping or otherwise, excluding however all IRA, Keogh, and trust accounts. Every such security interest and right of setoff may be exercised without demand upon or notice to Guarantor. No security interest or right of setoff shall be deemed to have been waived by any act or conduct on the part of Lender or by any neglect to exercise such right of setoff or to enforce such security interest or by any delay in so doing. Every right of setoff and security interest shall continue in full force and effect until such right of setoff or security interest is specifically waived or released by an instrument in writing executed by Lender.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the indebtedness of Borrower to Lender, whether now existing or hereafter created, shall be prior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the indebtedness of Borrower to Lender. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender hereby is authorized, in the name of Guarantor, from time to time to execute and file financing statements and continuation statements and to execute such other documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

| 06-15-2000 | COMMERCIAL GUARANTY | Page 3 |
|---|---|---|
| | (Continued) | |

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Applicable Law.** This Guaranty has been delivered to Lender and accepted by Lender in the Commonwealth of Massachusetts. If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Essex County, Commonwealth of Massachusetts. Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other. This Guaranty shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (and including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Notices.** All notices required to be given by either party to the other under this Guaranty shall be in writing, may be sent by telefacsimile (unless otherwise required by law), and, except for revocation notices by Guarantor, shall be effective when actually delivered or when deposited with a nationally recognized overnight courier, or when deposited in the United States mail, first class postage prepaid, addressed to the party to whom the notice is to be given at the address shown above or to such other addresses as either party may designate to the other in writing. All revocation notices by Guarantor shall be in writing and shall be effective only upon delivery to Lender as provided above in the section titled "DURATION OF GUARANTY." If there is more than one Guarantor, notice to any Guarantor will constitute notice to all Guarantors. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty. If a court of competent jurisdiction finds any provision of this Guaranty to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances, and all provisions of this Guaranty in all other respects shall remain valid and enforceable. If any one or more of Borrower or Guarantor are corporations or partnerships, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, or agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Waiver.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY." NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED JUNE 15, 2000. THIS GUARANTY IS EXECUTED UNDER SEAL.

GUARANTOR:

Lake Champlain Transportation Company

By: _____
    Raymond C. Pecor, Jr., President

Signed, acknowledged and delivered in the presence of:

X _____
        Witness

X _____
        Witness

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.39 (C) Concentrex 2000 All rights reserved  [MA-E20A BOWDITCH.LN C3.OVL]

**EXHIBIT N**

**To**

**EXHIBIT 1**

# RIEMER & BRAUNSTEIN LLP
## COUNSELORS AT LAW

Three Center Plaza · Boston, Massachusetts 02108-2003
(617) 523-9000 · Fax (617) 880-3456
E-Mail firm@riemerlaw.com

Mark S. Scott
Direct Dial: (617) 880-3452
Writer's Direct Fax: (617) 692-3452
E-Mail: mscott@riemerlaw.com

New York, New York
(212) 302-8880 · Fax (212) 789-3100
Burlington, Massachusetts
(781) 273-2270 · Fax (781) 273-0776

**Certified Article Number**

**7160 3901 9848 7661 6491**

**SENDERS RECORD**

March 10, 2005

**VIA CERTIFIED MAIL/
RETURN RECEIPT REQUESTED
AND FIRST CLASS MAIL**

Lake Champlain Transportation Company
King Street Dock
Burlington, Vermont 05401
Attn: Ray C. Pecor, Jr., President

**Re:    Loan Arrangement between Sovereign Bank, successor by merger with First Essex
Bank, FSB, and Bowditch Boat Holdings, LLC**

Dear Mr. Pecor:

Please be advised that this firm is counsel to Sovereign Bank, successor by merger with First Essex Bank, FSB (the "**Bank**"), in connection with a certain loan arrangement entered into between the Bank and Bowditch Boat Holdings, LLC (the "**Borrower**"), and with Lake Champlain Transportation Company (the "**Guarantor**").

Reference is made to that certain Commercial Guaranty (the "**Guaranty**") dated June 14, 2000 executed and delivered by the Guarantor to the Bank, pursuant to which the Guarantor unconditionally guaranteed the full and punctual payment of all obligations of the Borrower to the Bank.

Please be advised that the Borrower is in default of its obligations to the Bank. Accordingly, the Bank hereby makes **DEMAND** upon the Guarantor for payment in full of all amounts due under the Guaranty, including without limitation, all principal, interest (accrued and hereafter accruing), fees, costs, expenses, and costs of collection (including attorneys' fees).

**PLEASE TAKE NOTICE** that if all amounts due pursuant to the Guaranty are not immediately paid in full, the Bank may commence all appropriate action to collect the outstanding indebtedness without further notice to the Guarantor.

**PLEASE TAKE FURTHER NOTICE** that the Bank hereby expressly reserves the right from and after the date of this notice to accept one or more payments from the Guarantor or on the Guarantor's behalf, and to apply any such payment in reduction of the outstanding obligations due under the Guaranty.

Lake Champlain Transportation Company
March 10, 2005
Page 2

The acceptance of any such payment shall not constitute a waiver of any defaults, whether now existing or hereafter arising, nor a waiver of the Bank's demand for immediate payment in full. Further, the Bank hereby expressly reserves all of its rights and remedies in this matter and confirms that the terms and conditions of the existing documents, instruments, and agreements remain in full force and effect.

Your prompt attention to this matter is anticipated.

Very truly yours,

Mark S. Scott

MSS
cc:     Mr. Bret Bokelkamp (via telecopier)
        Barry G. Braunstein, Esquire
880702.1

RIEMER & BRAUNSTEIN LLP
COUNSELORS AT LAW

**EXHIBIT 2**

**SUFFOLK, ss.**

# Commonwealth of Massachusetts



SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. _____ **05-1021  A** _____

SOVEREIGN BANK
_____ , Plaintiff(s)

v.

_____ BOWDITCH BOAT HOLDING LLC   ET ALS _____ , Defendant(s)

## SUMMONS AND ORDER OF NOTICE

To the above-named Defendant:        ROBERT J SALEM,   GOLDENEYE CORPORATION and
                                     ROBERT E BLAIR JR

    You are hereby summoned and required to serve upon_____ **Riemer & Braunstein** _____

plaintiff's attorney, whose address is **Three Center Pl Boston Mass 02108** _____ ,

an answer to the complaint which is herewith served upon you, within 20 days after service of this summons
upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against
you for the relief demanded in the complaint. You are also required to file your answer to the complaint in
the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reason-
able time thereafter.

    Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which
you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter
of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

    WE ALSO NOTIFY YOU that application has been made in said action, as appears in the complaint,
for ~~a preliminary injunction~~ **re: attachments** and that a hearing upon such application will be held at the court house at said
Boston of our said court on_____ **Tuesday** _____the **twenty-ninth** _____

day of_____ **March** _____ A.D. 200 **5** , at _____ **two** _____ o'clock **P**.M., at which time you may

appear and show cause why such application should not be granted.

    Witness, ~~Suzanne V. DelVecchio~~, **Barbara J Rouse** Esquire, at Boston, the_____ **sixteenth** _____ day of

_____ **March** _____ , in the year of our Lord two thousand _____ **five** _____ .

_Assistant_   **Clerk/Magistrate**

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant,
   each should be addressed to the particular defendant.

FORM CIV. P. 2 5M 10/2000

...eby certify and return that today, March 18, 2005, I served a true and attested copy of the within Summons and Order of Notice; ...Action Cover Sheet; Complaint; Affidavit in Support of Plaintiff's Motions for Real Estate Attachments; Motions for Real Estate ...chments Against Defendants, Robert E. Blair, Jr., Goldeneye Corporation and Robert J. Salem; Motion for Appointment of ...cial Process Server upon the within named Robert E. Blair Jr., by leaving said copies at 39 Kittery Avenue, Rowley, MA *his/her* ...and usual abode. Furthermore, later this same day I mailed (first class postage prepaid) additional true and attested copies to ...within named Robert E. Blair Jr., at 39 Kittery Avenue, Rowley, MA .

...ed under the pains and penalties of perjury today, March 18, 2005.

**...nis Mahoney, Constable**
...sinterested Person over Age 18.

...vice & Travel:$79.00

**...ler and Witten**
...ton, MA
...') 325-6455

**EXHIBIT 3**

SUFFOLK, ss.

# Commonwealth of Massachusetts



SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No.    __05-1021   A__

SOVEREIGN BANK

_____ , Plaintiff(s)

v.

_____BOWDITCH BOAT HOLDING LLC   ET ALS_____ , Defendant(s)

## SUMMONS AND ORDER OF NOTICE

To the above-named Defendant:    **ROBERT J SALEM,   GOLDENEYE CORPORATION and
ROBERT E BLAIR JR**

You are hereby summoned and required to serve upon____**Riemer & Braunstein**_____

plaintiff's attorney, whose address is __**Three Center Pl Boston Mass 02108**_____,

an answer to the complaint which is herewith served upon you, within 20 days after service of this summons
upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against
you for the relief demanded in the complaint. You are also required to file your answer to the complaint in
the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reason-
able time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which
you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter
of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

WE ALSO NOTIFY YOU that application has been made in said action, as appears in the complaint,
~~for a preliminary injunction~~ **re: attachments** and that a hearing upon such application will be held at the court house at said

Boston of our said court on_____**Tuesday**_____the__**twenty-ninth**____

day of____**March**_____A.D. 200 **5**, at __**two**_____ o'clock **P**.M., at which time you may

appear and show cause why such application should not be granted.

Witness, ~~Suzanne V. DelVecchio~~ **Barbara J Rouse**, Esquire, at Boston, the__**sixteenth**_____ day of

_____**March**_____, in the year of our Lord two thousand ____**five**_____ .

_Clerk signature_

**Assistant    Clerk/Magistrate**

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant,
   each should be addressed to the particular defendant.

FORM CIV. P. 2 5M 10/2000

COMMONWEALTH OF MASSACHUSETTS
Superior Court Department Suffolk County

reby certify and return that today, March 18, 2005, I served a true and attested copy of the within Summons and Order of Notice; l Action Cover Sheet; Complaint; Affidavit in Support of Plaintiff's Motions for Real Estate Attachments; Motions for Real Estate chments Against Defendants, Robert E. Blair, Jr., Goldeneye Corporation and Robert J. Salem; Motion for Appointment of cial Process Server upon the within named Robert J. Salem, by leaving said copies at 323 Concord Street, Gloucester, MA *her* last and usual abode. Furthermore, later this same day I mailed (first class postage prepaid) additional true and attested ies to the within named Robert J. Salem, at 323 Concord Street, Gloucester, MA .

med under the pains and penalties of perjury today, March 18, 2005.

nis Mahoney, Constable
Disinterested Person over Age 18.

vice & Travel:$85.00

**tler and Witten**
ston, MA
7) 325-6455

**EXHIBIT 4**

SUFFOLK, ss.

# Commonwealth of Massachusetts



SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION
No._____05-1021  A_____

SOVEREIGN BANK

_____ , Plaintiff(s)

v.

_____BOWDITCH BOAT HOLDING LLC   ET ALS_____ , Defendant(s)

## SUMMONS AND ORDER OF NOTICE

To the above-named Defendant:         ROBERT J SALEM,   GOLDENEYE CORPORATION and
ROBERT E BLAIR JR

     You are hereby summoned and required to serve upon_____Riemer & Braunstein_____

plaintiff's attorney, whose address is__Three Center Pl Boston Mass 02108_____ ,

an answer to the complaint which is herewith served upon you, within 20 days after service of this summons

upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against

you for the relief demanded in the complaint. You are also required to file your answer to the complaint in

the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reason-

able time thereafter.

     Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which

you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter

of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

     WE ALSO NOTIFY YOU that application has been made in said action, as appears in the complaint,
re: attachments
for xxxxxxxxxxxxxxxxxxxxxn and that a hearing upon such application will be held at the court house at said

Boston of our said court on_____Tuesday_____the__twenty-ninth_____

day of__March_____A.D. 200_5_, at __two_____ o'clock ₳.M., at which time you may

appear and show cause why such application should not be granted.

     Witness, Suzanne xx DelVecchio, Esquire, at Boston, the __sixteenth_____ day of
Barbara J Rouse,

_____March_____ , in the year of our Lord two thousand ___five_____ .

Assistant    Clerk/Magistrate

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant,
each should be addressed to the particular defendant.

FORM CIV. P. 2 5M 10/2000

COMMONWEALTH OF MASSACHUSETTS
Superior Court Department Suffolk County

ereby certify and return that today, March 22, 2005, I served a true and attested copy of the within Summons and Order of tice; Civil Action Cover Sheet; Complaint; Affidavit in Support of Plaintiff's Motions for Real Estate Attachments; Motions for al Estate Attachments Against Defendants, Robert E. Blair, Jr., Goldeneye Corporation and Robert J. Salem; Motion for pointment of Special Process Server upon the within named Goldeneye Corporation, by giving in hand to Robert E. Blair Jr. , esident Agent.   Said service was effected at: Goldeneye Corporation, c/o Robert E. Blair, Jr., Resident Agent, 39 Kittery enue, Rowley, MA .

gned under the pains and penalties of perjury today, March 22, 2005.

avid H. Sullivan, Constable
Disinterested Person over Age 18.

ervice & Travel:$144.00

utler and Witten
oston, MA
317) 325-6455

**EXHIBIT 5**

# Commonwealth of Massachusetts

SUFFOLK, ss.



SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. _05 - 1021 A_

_Sovereign Bank_ , Plaintiff(s)

v.

_Bowditch Boat Holding LLC et al_ Defendant(s)

## SUMMONS

To the above-named Defendant: _Salem Whale Watch + Cruise Company LLC_

You are hereby summoned and required to serve upon _Meeyan Casey, Esq._
_of Riemer + Braunstein LLP_
plaintiff's attorney, whose address is _3 Center Plaza, Boston, MA 02108,_ an answer to
the complaint which is herewith served upon you, within 20 days after service of this summons upon you,
exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint. You are also required to file your answer to the complaint in the office
of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable
time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which
you may have against the plaintiff which arises out of the transaction or occurrence that is the subject
matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, **Barbara J. Rouse**, Esquire, at Boston, the_____17th_____ day of
_March_____, in the year of our Lord two thousand _and five_____.

_Michael Joseph Donovan_

Clerk/Magistrate

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
    (1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P. 1 3rd Rev.

...ereby certify and return that today, March 23, 2005, I served a true and attested copy of the within Summons; Civil Action Cover ...eeet; Complaint; Affidavit in Support of Plaintiff's Motions for Real Estate Attachments; Motions for Real Estate Attachments ...ainst Defendants, Robert E. Blair, Jr., Goldeneye Corporation and Robert J. Salem; Motion for Appointment of Special Process ...rver in this action upon the within named Salem Whale Watch and Cruise Company LLC, by leaving said copies at c/o Robert J. ...lem, Resident Agent, 323 Concord Street, Gloucester, MA *his/her* last and usual abode. Furthermore, later this same day I mailed ...st class postage prepaid) additional true and attested copies to the within named Salem Whale Watch and Cruise Company LLC, ...c/o Robert J. Salem, Resident Agent, 323 Concord Street, Gloucester, MA .

...gned under the pains and penalties of perjury today, March 23, 2005.

...vid H. Sullivan, Constable & Special Process Server
...Disinterested Person over Age 18.

...rvice & Travel:$170.00

**...tler and Witten**
...oston, MA
...17) 325-6455

**EXHIBIT 6**

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                                SUPERIOR COURT
                                                           CIVIL ACTION NO. 05-1021A

SOVEREIGN BANK, SUCCESSOR BY
MERGER WITH FIRST ESSEX BANK,
F.S.B.,

                    Plaintiff,

v.                                                **AFFIDAVIT OF SERVICE AS TO
                                                  DEFENDANT, LAKE CHAMPLAIN
BOWDITCH BOAT HOLDING, LLC;                        TRANSPORTATION COMPANY**
GOLDENEYE CORPORATION; SALEM
WHALE WATCH & CRUISE
COMPANY, LLC; LAKE CHAMPLAIN
TRANSPORTATION COMPANY;
ROBERT E. BLAIR, JR.; ROBERT J.
SALEM AND HENRY LORD,

                    Defendants.

I, Meegan B. Casey, counsel for the Plaintiff, Sovereign Bank, hereby certify that on

March 17, 2005, copies of the Summons, Complaint (with Exhibits), Civil Action Cover Sheet,

Affidavit in Support of Plaintiff's Motions for Real Estate Attachments, Motion for Real Estate

Attachment Against Defendant Robert E. Blair, Jr., Motion for Real Estate Attachment Against

Defendant Goldeneye Corporation, Motion for Real Estate Attachment Against Defendant

Robert J. Salem, and Motion for Appointment of Special Process Server all filed in the

above-captioned action, were forwarded by certified mail, return receipt requested, postage

prepaid, to the Defendant, Lake Champlain Transportation Company, at its usual place of

business. A true and accurate copy of the service letter along with the Original Summons and

Certified Mail Return Receipt Card evidencing service on March 19, 2005 are collectively

annexed as **Exhibit A** hereto.

SOVEREIGN BANK, SUCCESSOR BY
MERGER WITH FIRST ESSEX BANK, F.S.B.

By its Attorney,
RIEMER & BRAUNSTEIN LLP

Dated: March 25, 2005

Meegan B. Casey
BBO #648526
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts 02108
(617) 523-9000

58025.524.883839.1

# Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. _05 - 1021 A_

_____Sovereign Bank_____ , Plaintiff(s)

v.

__Bowditch Boat Holding LLC et al__ Defendant(s)

## SUMMONS

To the above-named Defendant: _Lake Champlain Transportation Company_

You are hereby summoned and required to serve upon _Meegan Casey, Esq._
_of Riemer + Braunstein LLP_
plaintiff's attorney, whose address is _2 Center Plaza, Boston, MA 02108_, an answer to
the complaint which is herewith served upon you, within 20 days after service of this summons upon you,
exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint. You are also required to file your answer to the complaint in the office
of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable
time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which
you may have against the plaintiff which arises out of the transaction or occurrence that is the subject
matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, **Barbara J. Rouse**, Esquire, at Boston, the _17th_ day of
_March_ , in the year of our Lord two thousand _and five_ .

_Michael Joseph Donovan_

Clerk/Magistrate

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.

2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant,
   each should be addressed to the particular defendant.

3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED

   (1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P. 1 3rd Rev.

2. Article Number

|||||||||||| |||| |||||||||| |||||||

7160 3901 9848 3120 5210

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)     B. Date of Delivery
3-7-9-05

C. Signature

X _Denise Morrell_     ☐ Agent
                        ☐ Addressee

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type  **CERTIFIED MAIL**

4. Restricted Delivery? *(Extra Fee)*   ☐ Yes

1. Article Addressed to:

Lake Champlain Transportation Company
King Street Dock
Burlington, Vermont  05401
Attn: Ray C. Pecor, Jr., President
(58025.524-MXC)

PS Form 3811, July 2001                Domestic Return Receipt

UNITED STATES POSTAL SERVICE



First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

● PRINT YOUR NAME, ADDRESS AND ZIP CODE BELOW ●

RIEMER & BRAUNSTEIN LLP
3 CENTER PLAZA
BOSTON MA  02108-2090

# *RIEMER & BRAUNSTEIN* LLP

═══════════ C O U N S E L O R S   A T   L A W ═══════════

Three Center Plaza · Boston, Massachusetts 02108-2003

(617) 523-9000 · Fax (617) 880-3456

E-Mail firm@riemerlaw.com

Meegan B. Casey
Direct Dial: (617) 880-3447
Writer's Direct Fax: (617) 692-3447
E-Mail: mcasey@riemerlaw.com

New York, New York
(212) 302-8880 · Fax (212) 789-3100
Burlington, Massachusetts
(781) 273-2270 · Fax (781) 273-0776

March 17, 2005

**VIA CERTIFIED MAIL/RETURN RECEIPT**
**REQUESTED AND FIRST CLASS MAIL**

Certified Article Number

7160 3901 9848 3120 5210

SENDER'S RECORD

Lake Champlain Transportation Company
King Street Dock
Burlington, Vermont 05401
Attn: Ray C. Pecor, Jr., President

Re:  **Sovereign Bank v. Bowditch Boat Holding LLC et al., Suffolk Superior Court, Civil**
**Action No. 05-1021A**

Dear Mr. Pecor:

Please be advised that this firm and the undersigned are counsel to Sovereign Bank, the Plaintiff in the above captioned matter in which Lake Champlain Transportation Company has been named a Defendant. Pursuant to the provisions of Massachusetts General Laws, Chapter 223A, relating to service of process of out-of-state parties, we enclose a copy of the Summons, together with a copy of each of the following:

1.  Civil Action Cover Sheet;

2.  Complaint;

3.  Affidavit in Support of Plaintiff's Motions for Real Estate Attachments;

4.  Motion for Real Estate Attachment Against Defendant Robert E. Blair, Jr.;

5.  Motion for Real Estate Attachment Against Defendant Goldeneye Corporation;

6.  Motion for Real Estate Attachment Against Defendant Robert J. Salem;

7.  Motion for Appointment of Special Process Server.

Mr. Henry Lord
March 17, 2005
Page 2

We anticipate that you will give your immediate attention to this matter to protect the interests of Lake Champlain Transportation Company.

Very truly yours,

Meegan B. Casey

Enclosures

cc:    Mr. Bret Bokelkamp (with copy of Summons only)

*RIEMER & BRAUNSTEIN* LLP
COUNSELORS AT LAW